THE BOARD OF SUPERVISORS OF CUMBERLAND COUNTY

*v.*

GORDON WEBSTER *et al.*

1.  TAX—*for building bridges—what number of supervisors necessary to levy the same.*  Less than a majority of the whole number of the board of supervisors in a county, can not appropriate funds to aid in the construction of bridges.  Nor can less than a majority levy a tax for that purpose.

2.  So an order of less than a majority of the whole number of supervisors in Cumberland county, making a levy for the purpose of building a bridge, under the act of the nineteenth of February, 1867, authorizing the board of supervisors of Cumberland county to levy and collect a special tax for the purpose of building bridges, was unauthorized and void.

3.  INJUNCTION *to restrain the collection of a tax.*  Where less than a majority of a board of supervisors of a county have undertaken to levy a tax for bridge purposes, equity will interpose to restrain its collection, as being levied without legal authority.

WRIT OF ERROR to the Circuit Court of Cumberland county; the Hon. HIRAM B. DECIUS, Judge, presiding.

The opinion states the case.

Mr. O. B. FICKLIN and Mr. JOHN SCHOLFIELD, for the plaintiffs in error.

Mr. THOMAS BREWER and Mr. W. H. McDONALD, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill to enjoin the levy and collection of a tax to build a bridge across the Embarrass river, in Cumberland county.  The bill alleges that the board of supervisors of Cumberland county, did, at their June session, 1867, attempt,

by an order entered of record, to levy and have collected, a tax of twenty cents on each $100 worth of taxable property of the county, for the purpose of building a bridge across the Embarrass river, on the national road. The order required the county clerk to extend the tax for that amount on the several collectors' warrants for the year. It appears that the entire board consists of eight supervisors, and that seven were present when this order was passed, and that four voted for, and three against its adoption. And it is contended that this order for the levy of the tax is unauthorized and void for the want of power for its levy by a less number than a majority of the whole board voting therefor.

It is provided by the fourth clause of the sixth sec. of art. 14, township organization laws (Gross' comp. 758) that the board may appropriate funds to aid in the construction of roads and bridges in any part of their respective counties, whenever a majority of the whole board of the county may deem it expedient and proper.

The general assembly, by a special act, approved the nineteenth day of February, 1867, empowered the board of supervisors of Cumberland county to levy and collect a tax of not more than thirty cents on each one hundred dollars worth of taxable property, in the same manner as other taxes are levied and collected, to be appropriated to building a bridge or bridges in the county. (Private laws, 1867, vol. 3, p. 120.) These provisions seem to be all that relate to this subject.

Under the general provision contained in the fourteenth article of the township organization law, it seems to be imperative that a majority of the board of the whole county should concur in the appropriation. The language can bear no other interpretation; in fact, it is too plain for construction. It is clearly and positively written that a majority of all of the supervisors must concur in the action, and it follows that when a less number adopt such an order, it is in contravention of this statute, and cannot be upheld.

The special act of 1867, only authorizes and empowers the board to levy and collect a tax for bridge purposes, in the same manner as other taxes are levied and collected. It says nothing in reference to the number of supervisors who shall vote for the levy of the tax. Inasmuch as the legislature had restrained a majority of a *quorum* of the board, only; from making such appropriations, it can not, in the absence of some language indicating an intention to release this board from the provisions of the general law, be held that they might act otherwise than as it has provided. We can gather nothing from the special act to justify the inference that a less number than a majority of the entire county board could levy and appropriate this tax. We must presume that the general assembly intended the board of this county to act in conformity to the general law, as they have not exempted them from its operation. The order, therefore, levying this tax, only having been voted for by one-half, and not by a majority, of the whole board, was unwarranted, and can not be enforced.

A distinction is attempted to be taken between the levy of the tax and its appropriation; that while it requires a majority of the whole board to appropriate the money to erect a bridge, if it has been collected, a majority of a bare *quorum* may levy a bridge tax. We regard this proposition as untenable. It might frequently happen that a majority of the board would be decidedly opposed to making any such appropriation, while the majority of a *quorum* favored it, and if they could levy such a tax, it could not be appropriated for the building of bridges, unless the majority, finding a large surplus fund in the county treasury, not required for the ordinary expenses of the county, should thus be forced into acquiescence, to prevent its remaining unemployed, or from being squandered in some unnecessary improvement or worthless object. Such power could not have been intended by the general assembly.

As a general rule, when a county, or municipal corporation, are authorized to levy a tax for a special purpose, the act of levying it amounts to its appropriation. Such bodies can not divert it to other purposes. Their power to levy, in such cases, is only that it may be applied to the specified object. To permit this tax to be levied for the special purpose, when it is not known that a majority of the board will ever.consent to apply it to the construction of this or any other bridge, would be oppressive, and a wrong to the tax payers of the county. It cannot be held that the board of supervisors may at pleasure force the people to pay heavy taxes, simply that the money may be placed in the county treasury, and, so far as we can see, never to be appropriated. To sanction such a course, would be to legalize oppression, and for aught we can see or know, if this tax should be collected, it would never be appropriated.

This is one of the class of cases in which equity will interpose its power to restrain the collection of a tax. It is attempted to be levied and collected without power or legal authority. It is imposed contrary to law, as the indispensable number of supervisors have not concurred in its imposition. The decree of the court below is affirmed.

*Decree affirmed.*