## EDMUND B. FAIRFIELD *et al.*

*v.*

## THE PEOPLE *ex rel.* Samuel H. McCrea, Collector, etc.

1. TAXATION—*whether for corporate purpose, and herein, as to the validity of an enabling act in respect to back taxes.* The tax ordered to be levied by the common council of the city of Chicago for municipal expenditures for the years 1873 and 1874, was for a corporate purpose and within the appropriation ordinances of those years, and the act of 1877 authorizing cities and towns to collect back taxes, the collection of which had been defeated, does not require the imposition or levy of a new tax, but the act is merely remedial to aid in the remedy to enforce a pre-existing right, and therefore the collection of such back taxes is not for the payment of debts contracted in excess of the constitutional limitation of the power of the city to create indebtedness.

2. Where a city levies a tax within its authorized powers but fails to collect the same, the levy being defective in not having been made in the time required by law, and because not certified to the county clerk for extension, it is competent for the legislature subsequently to authorize their collection by certifying the proper amount of the levy to the county clerk, and having the same extended upon the assessment of the year for which they were levied, the same as might have been done at the proper time.

3. Under the act of 1877 for the collection of unpaid back taxes, the common council has nothing to do in the way of the imposition of taxes, but is merely to ascertain and cause to be certified what was done by the former common councils, and the only limitation is that such amount shall not exceed the appropriation ordinances for the years in which such taxes were levied.

4. The fact that the municipal expenses of a city have been paid for certain years in which the collection of its taxes was defeated, presents no constitutional or other grounds why such back taxes may not be collected under appropriate enabling legislation, it being a cardinal principle of taxation under the constitution that each shall contribute his share towards governmental expenses in proportion to the value of his property.

5. Nor will the fact that such back taxes levied are not now needed, and will not be applied to the particular corporate purposes for which they were originally required when attempted to be collected, render their collection improper. They will still belong to the corporation for municipal purposes, and, like any other surplus, will remain in the treasury subject to future appropriations, and thereby lessen future taxation.

6. SAME—*actual levy not essential to lien.* It is not essential to the lien given by law for taxes, that an actual levy should be made within the year. If not made within the year and the taxes are not paid, it is competent by subsequent

legislation to enforce the lien, by authorizing the levy and collection in subsequent years upon the assessment of the proper year or years.

7. SAME—*uniformity.* Where the collection of a tax has been defeated for defects in the levy, or other proceedings not going to the right to levy the same, and some of the taxes have been voluntarily paid, a law authorizing the proper extension and collection of such taxes, which provides for giving credits to the parties paying personal taxes and to the land for the taxes voluntarily paid on the same, is not in violation of the constitutional provision requiring uniformity.

8. SAME—*construction of act of* 1877. The act of 1877, giving power to the common council to determine and certify the amount which *was* required to be raised by taxation for all municipal purposes for any prior years, for or during which an assessment or levy was attempted to be made, means the amount that was by the action of the city council in such prior years required to be raised by taxation for those years, and not merely for a sum sufficient for the city expenses over and above the means and revenue derived from licenses and other sources.

9. APPROPRIATION ORDINANCE—*when passed.* Where an appropriation ordinance was passed within the time limited by law, and the mayor afterwards vetoed some of the items, and after the time fixed for passing such ordinance the city council passed most of the vetoed items over the veto, it was held that the ordinance was passed in time, the subsequent action of the council amounting in law merely to an adherence to appropriations already made.

APPEAL from the Appellate Court of the First District.

Mr. JOHN P. WILSON, for the appellants.

Mr. FRANCIS ADAMS, Mr. GEORGE W. SMITH, and Mr. JOSEPH BONFIELD, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The city of Chicago attempted to assess, levy and collect municipal taxes for the years 1873 and 1874, under and by virtue of an act of the General Assembly entitled "An act in regard to the assessment of property and the levy and collection of taxes by incorporated cities in this State," approved April 15, 1873, known as the "City Tax act," (Rev. Stat. 1874, p. 254.) The validity of the taxes so attempted to be levied and collected was contested by certain of the tax-payers, and this court decided, in the case of *The People* v. *Cooper,* 83

Ill. 585, that said statute was unconstitutional, and upon that ground such tax-payers succeeded in defeating the collection of the taxes.

In 1877 the General Assembly passed an act entitled " An act in regard to the assessment, levy and collection of the taxes of incorporated cities in this State for years prior to the year 1877," and in force July 1, 1877. Laws of 1877, p. 56.

The city of Chicago proceeded to act under the last named ·act, and caused the city taxes for the years 1873 and 1874 to be extended upon the State and county assessment for those years. At the July term, 1878, of the county court of Cook county, application for judgment was made against the real estate alleged to be delinquent for said city taxes, and appellants filed objections. The county court overruled the objections, and entered judgment for the taxes claimed in the application, less sixteen per cent of the taxes of 1873 and fourteen per cent of the taxes of 1874, from which judgment an appeal was taken to the Appellate Court for the First District, where the judgment of the county court was affirmed, to reverse which judgment of the Appellate Court this appeal is prosecuted.

The first section of the aforesaid act, approved May 5, 1877, is as follows:

"Section 1. That in all cases where any incorporated city in this State has attempted to assess, levy or collect taxes for any year or years prior to the year A. D. 1877, under or by virtue of the provisions of an act entitled 'An act in regard to the assessment of property and the levy and collection of taxes by incorporated cities in this State,' approved April 15, 1873, or under or by virtue of any unconstitutional law, or any law which has been declared unconstitutional or void by the Supreme Court of this State, and in all cases where the assessment of property for the purpose of taxation, or the tax levy made by any city for any year prior to the year 1877, has been declared void or unconstitutional, or has been set aside, and such city has failed to collect the taxes so

attempted to be assessed and levied, or any part thereof, the city council or common council of such city may, by ordinance, ascertain and determine and cause to be certified to the county clerk of the county in which such city is situated, on or before the second Tuesday in August, in any year, the total amount which was required to be raised by taxation for all municipal purposes of said city, for any year or years prior to the year 1877, for or during which an assessment or levy was attempted to be made as aforesaid, the amount so certified for any year not to exceed the total amount of all appropriations made by such city for such year. Such certificate, made to the county clerk as aforesaid, shall be *prima facie* evidence that the amount certified does not exceed the sum total of the appropriations for the year for which such amount is certified."

Section 2 provides for the ascertainment by the county clerk of the rate which will produce the amount certified, the extension of the tax upon the assessment for State and county purposes for the year for which such taxes are certified to have been required, the issuance of warrants to the officers charged with the collection of State and county taxes, and that the collection shall proceed in the same manner, and by the same officers, as in the case of State and county taxes.

Section 3 provides that all payments made on account of the taxes upon any such former assessment or levy, shall be deemed to have been voluntary payments, but shall be credited to the person paying the same when paid as a personal tax, and to the land in respect to which the same were made when paid as a real estate tax; and in case the payment shall equal the amount of tax extended under the present law, nothing shall be collected, and, if less, then the difference only shall be collected.

It is objected that the city taxes, for which judgment was rendered in this case, were not levied for corporate purposes of the city of Chicago, and so not warranted by the constitution of this State; it being well settled that thereunder taxes

can only be levied by municipal corporations for the corporate purposes of the municipal corporation levying the tax.

The argument by which the objectors reach the conclusion that the taxes were not levied for corporate purposes, is in this wise: That the taxes were levied for the municipal expenditures of the years 1873 and 1874, and for no other purpose; that it was proved or offered to be proved that the entire expenditures of the city in 1873 and 1874 were met and paid by voluntary contributions of the citizens prior to the passage of the law of 1877, such voluntary contributions being taxes for 1873 and 1874, which were voluntarily paid; that it appeared that the bonded debt of the city of Chicago, in the year 1872, exceeded the constitutional limitation of five per cent, and has, ever since, continued in excess of said limitation, whence, it was beyond the power of the municipal authorities of Chicago to create any debt or obligation against the city during the years 1873 and 1874, which could be made the basis of subsequent taxation; that if the expenditures in 1873 and 1874 created an obligation to levy a tax in the future, they created a debt, and that could not then be done; that the corporate purposes of 1873 and 1874 had been subserved and had ceased to exist, and that a corporate purpose which has ceased to exist can not be made the basis of present taxation; that these taxes were levied in 1877; that there is no object to which the present taxes, if collected, could be lawfully applied; that taxes levied to raise a fund to lie idle in the city treasury, are not levied for a corporate purpose.

The defect in the argument is in the assumption that this was a levy of taxes in 1877, and treating the act of 1877 as though it were one authorizing original taxation, and laying out of view the character of the act as being purely remedial. The act is not one creative of any right, but it is one merely in aid of the remedy for the enforcement of a pre-existing right. It is not to authorize the imposition of taxes, but it is simply to enable cities to collect their back taxes. In the

years 1873 and 1874 these taxes were needed and required for a corporate purpose,—to pay the municipal expenses of those years.

There was an appropriation ordinance for 1873 and 1874. The city council had the power, irrespective of the "city tax act," to pass the appropriation ordinance. There was a valid assessment, made under the general Revenue law, upon which the taxes required to be raised or the amount required to be raised by taxation might have been extended. It was an assessment made under that law by the town assessors, reviewed by the town board, equalized by the county board, and equalized by the State Board of Equalization. That assessment for 1873 and 1874 stands now, and on that assessment the taxes have been extended under the operation of the act of 1877.

Levy ordinances were, in fact, passed in 1873 and 1874, from which was ascertainable the amount required to be raised by taxation in 1873 and 1874; and the amounts did not exceed the amounts named in the appropriation ordinances. But they were defective in not having been passed before the second Tuesday of August, as required by the general Revenue law, and the supplemental act of certifying to the county clerk the amount required to be raised by taxation, as required by that law, was wanting.

Had this act of certifying to the county clerk been done as required, then the collection of the taxes might have been proceeded with and effectually enforced under the general Revenue law. The power and authority to that end were ample under that law.

The irregularity was, in not proceeding to the end under that law and having the collection of the taxes made in the manner and by the same officers the State and county taxes were; but instead thereof, acting mistakenly by seeking to have the collection made by the city officers under the unconstitutional "city tax act."

Now, this statute of 1877 takes up the process of the col-

lection of the taxes for 1873 and 1874 at the point where the irregularity occurred, and enables the collection to be proceeded with from that point, as it might have been, and should have been proceeded with at those times. The statute, in substance, but extends the time for the performance of an act which the common council might formerly have performed, to-wit: to certify to the county clerk the amounts which they required in those years to be raised by taxation, and giving like effect to the act, as if then done.

Under this act of 1877 the city council does nothing itself in the way of the imposition of taxes.

Its function is merely to ascertain and determine and cause to be certified what was done by the former common councils—in the language of the act, "by ordinance ascertain and determine and cause to be certified to the county clerk of the county    *    *    *    the total amount which was required to be raised by taxation for all municipal purposes of said city for any year or years prior to the year 1877, for or during which an assessment or levy was attempted to be made, as aforesaid." This is all that the city council does under the act in the way of levying any tax. Such action clearly is not the levy of a present tax. It is merely the ascertainment and certification of a former step taken in the attempted levy and collection of taxes for prior years. And if the taxes for those years, at the time they were attempted to be assessed, levied and collected, were then for municipal purposes, we are of opinion that the objection does not well lie now to the taxes, that they were not levied for corporate purposes.

It is by our constitution a cardinal principle of taxation that all shall contribute to raising revenue for governmental purposes in proportion to the value of their property. It was the duty of these objectors to have thus contributed to the municipal expenses of the city in the years 1873 and 1874.

The enforcement of this duty was entered upon by the attempted levy and collection of taxes for those years on their property, and failed only from an irregularity in the

mode of procedure. What if the expenses of those years have been paid and satisfied? It was from the taxation of others, and not from any contribution made by the objectors. Their taxes remaining uncollected, the result would be that they would escape the payment of their just proportion toward the maintenance of municipal government, while others would bear more than their proportion of it. In avoidance of such injustice, and in assertion of the constitutional principle of equality of taxation, was the enactment of 1877. The act merely provides that what might and should then, in the former years, have been done, may now be done. The taxes were at the time, in 1873 and 1874, authorized in the respect of having the basis of a corporate purpose to sustain them. Because the taxes are not now needed for, and will not be applied to, the particular corporate purpose for which they were required at the time they were attempted to be levied and collected, the municipal expenses of 1873 and 1874, it does not follow that when collected they will not be applied to some municipal purpose. They would belong to the corporation, and would, like any other surplus, remain in the treasury subject to future appropriations for municipal purposes, and thereby lighten future taxation and thus operate in the equalization of the burden of taxation. In *Village of Hyde Park* v. *Ingalls et al.* 87 Ill. 11, where there was an item of some $22,000 in the tax levy of the village to pay expense of collection and deficiencies in collection, this court, in answer to an objection to this item, said: "A surplus may undoubtedly be brought into the treasury by this mode of levying, but it will not be lost. It will belong to the corporation, and may be used in extinguishing other debts or in the payment of current expenses, and thereby lighten future taxation."

The citation from *Cumberland County* v. *Webster*, 53 Ill. 141, where it was said, "It can not be held that the board of supervisors may at pleasure force the people to pay heavy taxes simply that the money may be placed in the county

treasury, and, so far as we can see, never be appropriated," is not applicable here. Such is not this law of 1877. If the result shall be that money will come into the city treasury unappropriated to any particular purpose then existing, it will be the mere incidental effect of the operation of a law which has for its sole object the enforcement of the collection of the unpaid taxes of former years.

The act of 1877 may be viewed as one to assist the remedy for the enforcement of a lien.

Section 253 of the general Revenue law is as follows: "The taxes assessed upon real property shall be a lien thereon from and including the first day of May in the year in which they are levied until the same are paid." *Almy* v. *Hunt,* 48 Ill. 45, was an action for a breach of covenant upon a deed made in October, 1865, plaintiff claiming that the taxes for 1865 had not been paid by defendant as covenantor. It was there said that a lien for taxes, and an assessment or levy, are different things; that the action of the board of supervisors has nothing to do in the creation of this lien; that their assessment but fixes the amount, the payment of which will discharge the lien.

It was further said: "Appellant makes another objection, that the tract was not properly listed for taxation for 1865, nor was there any legal levy of taxes upon it, the lot having been misdescribed, and consequently, no taxes were collectible upon it for that year. This last proposition might be admitted, yet, if there was a lien upon it, as we have shown there was, the covenant was broken, as the lien had to be removed."

It is then stated that the lot was not misdescribed.

This case appears to hold that it is not necessary for the lien that an actual levy should be made *within* the year. If not, then the lien arising under the statute on the first day of May in 1873 and 1874 for the taxes of those years, might be considered as continuing, and under the act of 1877 there would be a remedy for the enforcement of the lien. And this,

at least as against the then owners of the property in 1873 and 1874, would be no more that just.

Remedial statutes of the character of the one in question are of frequent occurrence in the exercise of legislation, and have been almost uniformly sustained.

Kent says, upon the subject: "A retrospective statute affecting and changing vested rights is very generally considered in this country as founded on unconstitutional principles, and consequently inoperative and void. But this doctrine is not understood to apply to remedial statutes, which may be of a retrospective nature, provided they do not impair contracts, or disturb absolute vested rights, and only go to confirm rights already existing, and in furtherance of the remedy by curing defects and adding to the means of enforcing existing obligations." 1 Kent Com. (12th ed.) 455.

Unless there be some constitutional restriction the legislature may authorize a municipality to levy and collect retrospective taxes, and for this purpose use the assessment roll of a previous year. 2 Dill. Mun. Corp. 595. In *Cowgill* v. *Long*, 15 Ill. 202, a case of a remedial statute in respect to a school tax defectively voted, this court said: "Laws of this character are often passed to secure the collection of taxes defectively levied, and there can be no serious objection to their validity." *Hosmer* v. *The People,* Sept. T. 1875, is the case where an application for a judgment against lands delinquent for the unpaid taxes of former years, in pursuance of the 277th section of the general Revenue law, was sustained.

It is next objected that the taxes in question are not uniform as to persons or property within the city of Chicago, as, under the constitution, they should be. The respect wherein this alleged want of uniformity is supposed to consist, is in the provision in section 3 of the act of 1877 for credits upon the amounts levied under its provisions of voluntary payments made in 1873 and 1874.

It is argued that these voluntary payments were mere advances made to the city in 1873 and 1874, which was at a

time when the city could not incur any debt or obligation by reason of its having reached its constitutional limit of indebtedness, and that it is the effect of the above provision that taxes are levied under this statute of 1877 and applied to the payment of a supposed debt or obligation of the city on account of these advances, which debt or obligation the city was incapable of incurring. This proceeds upon the same erroneous theory as the previous objection did, which treats the statute as one providing for the imposition of taxes originally, and that there is a present original levy of taxes under the statute; whereas the statute is one which deals merely with the remedy in respect to the collection of former taxes which had been attempted to be collected in an illegal way, adopting what had been before done, so far as legal, and enabling the process of the collection of the taxes to be gone forward with in the legal mode now as of the time when it might and should have thus proceeded. These deemed voluntary payments by the statute, and called advances in the argument, were taxes which had been paid voluntarily. Although the payment of the taxes could not have been compulsorily enforced, in the manner they were being attempted to be collected, they were nevertheless voluntarily paid. The payments were as and for the taxes, and so accepted by the city; and the provision in question as to credits is merely that persons shall not be required to pay their taxes a second time.

Viewing the statute in its true nature, nothing could be more just than this provision, and the want of it, requiring those who had voluntarily paid their taxes to pay them again, would have been entirely unwarrantable upon any principle of enlightened legislation. If authority be needed upon such a point, reference may be made to *Union Building Association v. City of Chicago*, 61 Ill. 440, where, upon the subject of making a new special assessment in a case where there had been a former illegal and void one, this court uses the following language:

"Where no payments have been made, and from the circumstances of the work the amount of the costs and expense rests upon estimates alone, then it (the new assessment) must be made in all respects like a first assessment. But when payments have been voluntarily made under the original, in whole or in part, then, although such original assessment may be void, still the payments must be allowed to apply;—if in full, they operate to discharge the land in respect to which they were made, if partial, they are a discharge *pro tanto*. It would be against the rules of a sound public policy to permit the city to receive such payments, then, alleging the invalidity of its own proceedings, repudiate them, and subject parties who have acted in the spirit of obedience to the law, to the costs, trouble and expense of overhauling proceedings already carried to full satisfaction by the voluntary acts and mutual consent of competent parties."

In *Tallman* v. *The City of Janesville*, 17 Wis. 71, it was held that an act passed in 1862, quite similar to that in question here, (made necessary to avoid difficulties growing out of previous unconstitutional taxation), providing for a reassessment of the taxes for 1854, 1855, 1856, and 1857, in the city of Janesville, was constitutional. The act contained a similar provision as here for credits to those who had paid their taxes voluntarily, and the constitution of Wisconsin had the same provision as our own, that the rule of taxation should be uniform. *Cross* v. *The City of Milwaukee*, 19 Wis. 509, is a like case. It is answered to the authorities from other States, which are substantially unanimous upon the question of the validity of such laws, that they are not applicable here, owing to the peculiarities in our constitution of the limitation of the extent of municipal indebtedness, and the denial to the legislature of the power to impose taxes upon municipal corporations. We do not consider the peculiar provisions of our constitution referred to as excluding the applicability of the authorities.

The taxing power of a State is absolute and uncontrolled, except so far as it is limited by constitutional provisions. *Ewrigh* v. *The People*, 79 Ill. 214.

The only grounds of constitutional objection which are urged, are those considered in respect of the want of corporate purposes and the want of uniformity because of the provision for credits of taxes paid. We do not find them to be sufficient.

It is insisted further, that the taxes levied for each of the years 1873 and 1874 are greater in amount than was authorized by the act of 1877.

This claim is based on the interpretation which the objectors put upon the statute of 1877, as respects the amount to be certified to the county clerk as required to be raised by taxation. The language of the statute, in this respect, is, that "the city council or common council of such city may, by ordinance, ascertain and determine and cause to be certified to the county clerk, etc., the total amount which was required to be raised by taxation for all municipal purposes of said city for any year or years prior to the year 1877, for or during which an assessment or levy was attempted to be made, as aforesaid; the amount so certified for any year not to exceed the total amount of all appropriations made by such city for such year." The objectors say this means the amount of the actual expenses of the year, after having deducted therefrom the amount of miscellaneous receipts applicable to the payment of appropriations; and that ascertaining the amount to be certified upon these *data*, the amount actually levied for each of the years 1873 and 1874 was largely in excess of the total amount required to be raised by taxation. It is said that it is not the total amount of legal expenditures which is by the act authorized to be certified, but the total amount of legal expenditures "required to be raised by *taxation;*" that the city has sources of revenue other than taxation; that its income from licenses, and other sources than taxation, amounts to a large sum each year, and that this

should be deducted from the amount to be certified; that where the tax is levied for the current year, the tax is limited to the estimated expenditures; but where the taxes are levied for a past year, as it is claimed was the case here, they should be limited to the actual expenditures of the year, less the miscellaneous receipts, and that such was the intention of the legislature here.

We are unable to concur in this construction of the statute. It proceeds upon the same erroneous view, as before noticed, of the character of the statute, and that the levy of the taxes is made under it as an original levy.   The act takes notice of and presupposes that previous attempt had been made to assess, levy and collect taxes for prior years under and by virtue of the unconstitutional " city tax act."   The city here had made appropriation ordinances for the years 1873 and 1874, and had passed levy ordinances from which was ascertainable the amount then required to be raised by taxation for those years.   And when the act conferred upon the city council the power to ascertain and determine and cause to be certified the total amount which *was* required to be raised by taxation for all municipal purposes for any prior years for or during which an assessment or levy was attempted to be made, we can have no doubt that there was meant thereby the amount that was, by the action of the city council in such prior years, required to be raised for taxation for the municipal purposes of those years.   The construction contended for is not warranted by the language employed, and it would be inconsistent with, and in defeat of, the very end and aim of the act, which we take to have been for the securing of equality of taxation.   A large proportion of the taxes for 1873 and 1874, on the basis of the amount which had been required to be raised by taxation in those years, had been voluntarily paid.   If it was intended that the amount to be certified to the county clerk, under the act of 1877, should be for the actual expenses of those years, and no more, the burdens of taxation would necessarily be unequal, and want of

uniformity would follow. There was not, under the act of 1877, to be taxation anew for prior years, but the proceeding was purely remedial for the collection of the taxes of former years which had been ineffectually attempted to be assessed, levied and collected; and the certificate named was to be of something which had been done in such attempt,—the amount which had been required to be raised by taxation for those years—in order that the county clerk might extend the tax upon the assessment which had been made by the town assessors for such years. The only limit fixed by the statute to the amount to be certified to the county clerk is, that it shall not exceed the amount of the appropriations for the year. This construction is strengthened by reference to the language used in section 2, in declaring what shall be done on this certificate being filed with the county clerk. It says, he shall extend the tax upon the assessment for the year for which such taxes are " certified to have been required." Not certified to be required now, or then, or to be required, but *to have been required.* Evidencing that the certificate was to be of what had been required by the action of the council in the former years.

It is not pretended that the certificate here, as to amount, exceeds the amount of the appropriations for 1873 and 1874, nor, as we understand, that it exceeds the amount that by the action of the city council in those years was required to be raised by taxation; the claim being that the certificate should have been only for the amount of the actual expenses of those years, less the miscellaneous receipts.

The fact appears that the total appropriations for 1874 were of the exact amount which was levied as taxes for the year 1874, and that no deduction from this amount was made for miscellaneous receipts in 1874, which were of a considerable amount. It is claimed that this amount of miscellaneous receipts should have been deducted, as it was not raised, or necessary to be raised, by taxation. This amount levied for taxes is certified to the county clerk as the amount which was

required to be raised by taxation for municipal purposes for that year.

On the former defeated application for judgment against these lands for the taxes of 1874, had the proceedings otherwise been legal, we do not consider that it would have been permissible to go behind the appropriation ordinance and show that the amount of the appropriation made by the council, and which they had required to be raised by taxation, was too large, or that it had been required to be thus raised irrespective of the miscellaneous receipts. The appropriations being for lawful municipal purposes, the amount would rest in the discretion of the council, and their determination in that respect, fairly made, would be accepted as conclusive; and neither the question of the amount of the appropriation nor of its having been satisfied in whole or in part would have been gone into, as we conceive. It must be the same, we think, upon the present application, and that the only thing to be ascertained is, what was the amount which was required by the city authorities in 1873 and 1874 to be raised by taxation for those years for municipal purposes, and that is to be accepted as the proper amount of the tax.

It is objected that the judgment is too large in the respect following:

The appropriation ordinance for the fiscal year commencing April 1, 1873, was passed by the council June 30, 1873, within the first quarter of the fiscal year. The mayor vetoed certain items in the ordinance, and his veto message, bearing date June 30, 1873, was presented to the council at its regular meeting held July 7, 1873, and the council, at that meeting, passed most of the vetoed items over the veto.

It is contended that the vetoed items passed over the veto included in the appropriation ordinance were not passed during the first quarter of the fiscal year, as required by the charter of the city, and that, consequently, the including those items in the judgment was error. The provision, in this respect, of the city charter then in force was: "All appropria-

tions shall be based upon specific and detailed statements made by some proper head of a department or officer of a city, and shall be made within the first quarter of the fiscal year, which fiscal year shall be held to commence on the first day of April, in every year."

Also : "Every act, ordinance or resolution passed by the common council, before it shall take effect, and within five days after its passage, shall be presented, duly certified by the city clerk, to the mayor for his approbation." The mayor had the power to veto any item in the appropriation ordinance.

We are inclined to regard that the appropriations were made during the first quarter of the fiscal year, within the meaning of the charter provision, and that the subsequent action of the council, at the meeting of July 7, 1873, amounted, in law, merely to an adherence to appropriations previously made, the mayor's veto to the contrary notwithstanding.

Some of the questions made arise upon the exclusion of evidence, but we have considered all the excluded evidence as admitted. There are some minor questions made, which have not been adverted to by specific mention, but we believe that what has been said, by the application of the principles and conclusions which have been announced, disposes virtually of all the questions which have been raised in the case, adversely to the objectors.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Subsequently, the following additional opinion was filed:

Per CURIAM: After a rehearing had in this case, and a further full consideration, we adhere to our former decision, and opinion filed herein, except in a single particular. For the reasons stated in the opinion in the case of *McIntosh* v. *The People*, 93 Ill. 540, we find there to be an error in the amount of the judgments in the present case to the extent of one $\frac{45}{100}$ per cent on the amount of the judgment for the taxes

for the year 1873.    The judgments of the court below will therefore be affirmed, except as to one $\frac{45}{100}$ per cent on the amount of the judgments for the taxes for the year 1873, and to the extent of such exception they are reversed.    There will be a similar order in respect of costs, as in the *McIntosh case.*

*Judgment affirmed in part, and in part reversed.*