# THE BALTIMORE AND POTOMAC RAILROAD COMPANY

*v.*

# FITZGERALD.

PRACTICE; BILL OF EXCEPTIONS; DAMAGES; USE OF STREETS BY RAILWAYS.

1.  In the preparation of a bill of exceptions it is improper to make a literal transcript of all of the testimony at the trial, taken from a stenographic report of the proceedings; and this court will not feel obliged to search through a mass of testimony in order to ascertain what there is that bears upon some specified ruling of the trial judge, nor will it regard a successful appellant necessarily entitled to costs when costs have been unduly enhanced by unnecessary matter in the record.
2.  The authority given by Congress to railroads to occupy certain streets of this city by their tracks does not give them an unlimited right to the use of such streets for storage, freight and switching purposes, and when such use by a railroad of a street results in the physical discomfort and annoyance of a property owner in the use of his property, the company is answerable to him in damages.

No. 242. Submitted February 19, 1894.—Decided March 5, 1894.

HEARING on a bill of exceptions by the defendant to the rulings of the Supreme Court of the District of Columbia, holding a law term, in an action for damages. *Affirmed.*

The FACTS are sufficiently stated in the opinion.

*Mr. Enoch Totten,* for the appellant, cited in his brief the following cases: *Glick* v. *B. & O. R. R.,* 21 Washington Law Reporter, 131; *Trook* v. *R. R. Co.,* 3 McArthur, 392; *Neitzey* v. *R. R. Co.,* 5 Mackey, 34; *Hopkins* v. *R. R. Co.,* 6 Mackey, 314; *Fitzgerald* v. *R. R. Co.,* 19 D. C. R., 513.

*Mr. Samuel Maddox* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is a suit against the Baltimore & Potomac Railroad Company to recover damages for alleged injury to the appellee, Susan Fitzgerald, in consequence of the maintenance

of a nuisance by the appellant in the conduct of its business in front of the premises owned and occupied by the appellee.

The appellee, plaintiff in the court below, is the owner of a lot of ground on the north side of Maryland avenue, between Ninth and Tenth streets southwest, in the city of Washington, improved by a brick house. This property she purchased on November 19, 1869, at a cost of about $7,000, for the purpose of keeping a boarding house; and she has since made it the home of herself and her family, having expended about $2,000 additional upon it for improvements. At this time there were railroad tracks, either one or two, on Maryland avenue, between the Long Bridge (on Fourteenth street) and First street, including, of course, the space between Ninth and Tenth streets southwest; by which, and by a continuation of them along First street to the intersection of Indiana avenue and C street northwest, the Alexandria and Washington Railroad Company, a corporation of the State of Virginia, to which these tracks belonged, made connection with the Baltimore and Ohio Railroad Company. If the appellant, the Baltimore and Potomac Railroad Company, had then entered the city of Washington, it had not extended its operations as far as Maryland avenue.

The Baltimore and Potomac Railroad Company is a corporation chartered by an act of the State of Maryland on May 6, 1853, for the purpose of constructing and operating a railroad from the city of Baltimore to some point on the Potomac river within that State, opposite Acquia creek in the State of Virginia, the ostensible purpose being to make connection at Acquia creek with the Richmond and Fredericksburg Railroad, running thence to Richmond and the south. This act remained in abeyance for several years; but it was revived by an act of the Assembly of Maryland, passed in 1865, when it was re-enacted, and the additional privilege granted of constructing a lateral road from the main stem towards the District of Columbia and the city of Washington, the lateral road being undoubtedly the main object

of the parties moving in the matter, and the so-called main stem being in fact a secondary consideration.

By an act of Congress of February 5, 1867 (14 Stat., 387), the Maryland company so chartered was authorized and empowered to extend its lateral branch into the District of Columbia to a terminal point in the city of Washington to be thereafter determined by Congress upon the presentation to it of a map of survey and location. By an act of Congress of March 18, 1869 (16. Stat., 1), two routes were prescribed by either of which, at its option, the company might enter the city of Washington.

The company selected the second of these, the terminal point of which was " the intersection of south C and west Ninth streets," being the first street intersection east of the premises of the appellee in this case. By another act of Congress of June 21, 1870 (16 Stat., 161), an extension of the road was allowed " by way of Maryland avenue, conforming to its grade, to the viaduct over the Potomac river at the city of Washington, known as the Long Bridge, and to extend their tracks over said bridge, and connect with any railroad constructed or that may hereafter be constructed in the State of Virginia." This last act, as it will be seen, brought the company for the first time in front of the premises occupied by the appellee.

There were then, as already stated, some tracks there, either one or two—for it is not very clear which was the actual number—belonging to the Alexandria and Washington Railroad Company. These fell under the control of the Baltimore and Potomac Railroad Company, which also caused three other tracks to be constructed in the street, making five in all there at the time of the alleged grievances complained of in this suit. The last of the five seems to have been put down about the year 1880.

It should be added that there was a freight station, by which railroad company constructed does not appear from the record, on square 386, which was on the south side of Maryland avenue, between Ninth and Tenth streets, and

which was used and occupied by the appellant at the time of these alleged grievances, the entrance thereto being from the west side on Tenth street. And it also appears that at the time when the appellee purchased her property in 1869, there was, and had been for several years, a platform in the street, between Ninth and Tenth streets, for the ingress and egress of passengers; and that this platform had been taken away as soon as the appellant commenced its operation on Maryland avenue.

The Baltimore and Potomac Railroad Company had been authorized by the act of Congress of February 5, 1867, to which reference has been made, to enter the District of Columbia, with "the same powers, rights and privileges" as it had under its charter in Maryland, except that it should not construct any other lateral roads from the one lateral road authorized by the act; and with the proviso also, that "whenever the said company shall find it necessary to cross or intersect any established road, street or other way, it shall be the duty of the said company so to construct the said railroad across such established road, street, or other way, as not to impede the passage or transportation of persons or property along the same." The "powers, rights and privileges" claimed by the company under the charter from Maryland are those set forth in the twelfth section of the act of the Assembly of that State of May 6, 1853, before mentioned, wherein it was specified that the company should have "all the rights and powers necessary to the construction, working, use and repair of a railroad from some suitable point in or near the city of Baltimore . . . to a point on the Potomac river, . . . with such branches at any point of said railroad, not exceeding twenty miles in length, as the said president and directors may determine; the said road, when completed, not to be more than sixty-six feet wide, except at or near its depots or stations, where the width may be made greater, with as many tracks as the president and directors may deem necessary."

An act of Congress of January 19, 1891 (26 Stat., 718),

legalizing certain turn-outs or switches of the company along the route of the road in the city of Washington, among others that to square 386, which has been before mentioned, is assumed to have no bearing upon the present controversy.

In this condition of things, and of the statute law bearing upon the subject, the appellee, Susan Fitzgerald, on August 23, 1883, instituted the present suit. The declaration contains four counts. The first of these charges the defendant, the appellant here, with the unlawful maintenance and use of four separate railroad tracks or sidings on Maryland avenue, between Ninth and Tenth streets, in front of the plaintiff's premises; with placing and retaining freight cars on said tracks for an unreasonable length of time; and with the shifting and moving of said cars thereon to the great injury and annoyance of the plaintiff from the steam, smoke, cinders, etc., that emanated from the locomotive engines used for the purpose, and entered and damaged the plaintiff's dwelling; and also with the causing thereby of jarring and loud noises which shook the plaintiff's property and injured it. The second count charges the defendant with the unlawful storage upon the tracks aforesaid of cars loaded with live animals, guano and other noxious substances, from which vile odors emanated to the injury and annoyance of the plaintiff. The third count charges that the defendant used the street in question as a freight yard for the purpose of loading and unloading freight cars, and thereby caused the street to be blocked with wagons and carts, and prevented the plaintiff from having the proper ingress and egress to or from her house. And the fourth count charges generally the unlawful maintenance and use by the defendant of four railroad tracks or sidings on this street in front of the plaintiff's premises. All these alleged nuisances are charged to have been committed between August 23, 1880, and August 23, 1883.

It seems that two trials of the suit have been had, both resulting in verdicts for the plaintiff. Of these two verdicts,

the first, which was for $250, was unsatisfactory to the plaintiff; and upon her appeal to the Supreme Court of the District of Columbia in general term, it was set aside, and the cause remanded for a new trial. Upon the second trial, verdict and judgment were rendered for the plaintiff for the sum of $2,000, reduced to $1,500 by remittitur on the part of the plaintiff. And it is upon the exceptions taken to the rulings of the court in the second trial that the present appeal has been prosecuted.

The bill of exceptions includes a literal transcript of all the testimony adduced at the trial, in the way of question and answer, apparently taken from a stenographic report of the proceedings. This method of preparing a bill of exceptions has the merit of relieving counsel from the trouble of the condensation and simplification of testimony and from all controversy as to what the testimony shows or what parts of the testimony should be set forth; and also the merit of relieving both the trial court and counsel from the work of settling a bill of exceptions in accordance with the immemorial usage of the common law since the matter was first regulated by the statute 13 Edw. I., ch. 31 (known as the Statute of Westminster 2d). And it may be that if an appellate tribunal had nothing else to do but to review testimony, and were authorized by law to review it, there might be nothing extremely unreasonable in setting forth the testimony in its minutest detail. But we do not understand this to be the legitimate province of an appellate court. Indeed, we are rather disposed to think that there might be some constitutional difficulties in the way of the exercise of any such power by a purely appellate tribunal. And we are also disposed to think that this method of preparing bills of exceptions is neither just to litigants nor fair to the courts that are called to pass upon them.

The Supreme Court of the United States has repeatedly had occasion to animadvert upon the practice that has been pursued here. In the case of *Hickman* v. *Jones*, 9 Wall., 197, it said: " We have to complain in this case, as we do

frequently, of the manner in which the bill of exceptions has been prepared. It contains all the evidence adduced on both sides, and the entire charge of the court. This is a direct violation of the rule of this court upon the subject. We have looked into the evidence and the charge only so far as was necessary to enable us fully to comprehend the points presented for our consideration, thus in effect reducing the bill to the dimensions which the rule prescribes. No good result can follow in any case from exceeding this standard. Our labors are unnecessarily increased, and the case intended to be presented is not unfrequently obscured and confused by the excess."

And again, in the case of *Hanna* v. *Maas*, 122 U. S., 24, the same court, by Mr. Justice Gray, said:

" This bill of exceptions has been framed in disregard of the settled rules of law upon the subject. No ruling upon evidence is open to revision, because none appears to have been excepted to (*Scott* v. *Lloyd*, 9 Pet., 418); and the overruling of the motion for a new trial is not a subject for exception. *Railway Co.* v. *Heck*, 102 U. S., 120. The bill of exceptions, instead of stating distinctly, as required by law and by the fourth rule of this court, those matters of law in the charge which are excepted to, and those only, does not contain any part of the charge, or any exception to it, and undertakes to supply the want by reference to exhibits annexed, containing all the evidence introduced at the trial, the whole charge to the jury, and notes of a desultory conversation which followed between the judge and the counsel on both sides, leaving it to this court to pick out from those notes, if possible, a sufficient statement of some ruling in matter of law. But to assume to do that would be to take upon ourselves the duty of drawing up a proper bill of exceptions, a duty which belonged to the excepting party and should have been performed before suing out the writ of error. This we are not authorized to do. Our duty and authority are limited to determining the validity of exceptions duly framed and presented."

What was said by the Supreme Court of the United States in these two cases, and on several other occasions, is fully applicable to the case now under consideration, and to another case submitted at the same time by the same appellant. We do not desire to be understood as saying that there may not be cases in which it would be proper to include in the bill of exceptions the substance of the whole testimony. But it is true that in all cases there is much, in the way of formal statement and irrelevant or unsubstantial matter, that might well be omitted. And it rarely happens that it is necessary to swell a record by the insertion of questions and answers. If counsel will persist in preparing their records, in this manner, they must be ready to take the consequences. The court will not regard itself as being under any obligation to search through a mass of testimony in order to ascertain what there is that bears upon some trifling ruling of the trial judge. Nor will it regard a successful appellant as necessarily entitled to costs, when costs have been unduly enhanced by unnecessary matter in the record.

It seems that to the admission or exclusion of testimony in this case there was no exception reserved. All the exceptions taken are based upon the instructions given or refused. On behalf of the plaintiff below, the appellee here, five instructions were asked, and all of them given. Counsel for the defendant presented sixteen instructions, six of which were given and ten refused. To the refusal to grant each one of these ten instructions, as well as to the granting of the five instructions on behalf of the plaintiff, the defendant excepted. To the charge of the court thereafter given of its own motion there was no exception.

It would seem to be necessary for a full understanding of the questions raised, that we should here give in full the instructions asked on both sides. The instructions given for the plaintiff were these:

" 1. If the jury find from the evidence that from the 23d day of August, A. D. 1880, to the bringing of this action the

plaintiff was the owner of a lot of ground and dwelling house on the north side of Maryland avenue between Ninth and Tenth streets southwest, in the city of Washington, District of Columbia, and in possession and occupation of said premises during said period, and that the defendant during said period used the said avenue between Ninth and Tenth streets in front of said dwelling house for the purpose of there loading and unloading and delivering freight and for moving and shifting its cars so unloaded back and forth in front of said dwelling house of the plaintiff by locomotive engines propelled by steam, and that said loading and unloading and delivery of freight, if any, and said moving and shifting of cars, if any, were attended with loud and disagreeable noises which could be distinctly heard in the plaintiff's said dwelling house, and that soot and cinders were thrown from said engines while so engaged into and upon said dwelling house and premises of the plaintiff, and that said soot and cinders were so thrown into and upon said dwelling house and premises in such quantities and so frequently as to be an annoyance and inconvenience to the plaintiff and to injure and soil the walls and furniture in said plaintiff's said dwelling house, and further find that any of said cars, if any, were in a filthy condition, and any of said freight, if any, so loaded and unloaded, was of an unsavory character and engendered foul and disagreeable odors and stenches, which were carried into said dwelling house in such quantities and so frequently as to annoy and offend the plaintiff, and that such noises were of such daily and nightly occurrence and so distinctly heard in said dwelling house of plaintiff as to annoy, harass and disturb the plaintiff living therein, and that said noises and said soot and cinders and said odors and stenches interfered with the comfortable occupation and enjoyment by the plaintiff of said dwelling house, then the plaintiff is entitled to recover in this action.

" 2. If the jury find from the evidence that from the 23d day of August, A. D. 1880, to the bringing of this action

the plaintiff was the owner of a lot of ground and dwelling house on Maryland avenue between Ninth and Tenth streets southwest, in the city of Washington, District of Columbia, and in the possession and occupation of said dwelling house during said period, and that the defendant during said period or any part of it caused or permitted its locomotive engines to stop on said avenue between said streets and in front of said dwelling house of the plaintiff and to remain there longer than was reasonably necessary in the conduct of its through business and to the transit of its regular and extra passenger and freight trains and to the full and careful maintenance of its freight depot or station abutting on the south side of said avenue between said streets, and that said engines so as aforesaid stopped and remaining made puffing and hissing noises which could be distinctly heard in said plaintiff's dwelling house and emitted and gave forth soot and cinders and heated steam and disagreeable and disgusting odors and stenches, and that said noises and sounds, if any, were of such daily and nightly occurrence and were so distinctly heard in said dwelling house as to annoy, harass and disturb the plaintiff living therein, and that said soot, cinders and heated steam, if any, and said odors and stenches, if any, were carried into said dwelling house in such quantities and so frequently as to be an annoyance and inconvenience to the plaintiff, and that said noises and sounds and said soot, cinders and heated steam and said odors and stenches interfered with the comfortable enjoyment by the plaintiff of said dwelling house, then the plaintiff is entitled to recover in this action.

" 3. If the jury find from the evidence that from the 23d day of August, 1880, to the bringing of this action or during any part of said period the defendant used any of the railroad tracks on Maryland avenue between 9th and 10th streets southwest, and in front of the dwelling house of plaintiff, for the storage thereon of cars loaded with cattle or other live stock, or cars loaded with guano or other bad-smelling freights or empty stock cars, in a filthy condition,

and that any of said cars, if any, so stored on said tracks emitted and gave forth disagreeable and disgusting odors and stenches which were carried into said dwelling house in such quantities and so frequently as to annoy, harass and disturb the plaintiff living therein and to interfere with the comfortable enjoyment by the plaintiff of the said dwelling house, then the plaintiff is entitled to recover in this action.

" 4. If the jury believe from the evidence that from the 23d day of August, 1880, to the bringing of this action the defendant used Maryland avenue between 9th and 10th streets southwest as a terminal point for freight trains coming into the city and there broke up said trains for the purpose of distributing said cars along said avenue, and also along Virginia avenue between 6th and 7th streets southwest, to be there unloaded in the public streets, and after said cars were so unloaded brought them back again to Maryland avenue between 9th and 10th streets, and there made them up into trains, and that said process of breaking up and making up freight trains between said 9th and 10th streets was attended with loud and disagreeable noises which interfered with the comfortable enjoyment by the plaintiff of her dwelling house, then the plaintiff is entitled to recover in this action.

" 5. If the jury find for the plaintiff under the instructions given, then the proper measure of damages is such sum as will reasonably compensate the plaintiff for the annoyance, discomfort and inconvenience, if any, to which plaintiff may have been subjected during the period of time embraced in this suit, but the plaintiff is not entitled to recover for any annoyance, discomfort, or inconvenience or for any injury to the use and enjoyment of said dwelling house which resulted from such use of Maryland avenue between 9th and 10th streets southwest by the defendant as was reasonably incident to the careful conduct of its through business and to the transit of its regular and extra passenger and freight trains and to the maintenance of its freight depot or station abutting on the south side of said avenue between said streets."

On the part of the defendant below the instructions requested were these.

"1. The plaintiff, under the declaration in this case and upon the evidence, cannot recover for injury or inconvenience caused by any obstructions in or upon Maryland avenue without showing special damage to herself.

"2. The plaintiff is not entitled to recover anything in this case for noise, smoke, odors, or any other inconveniences suffered by her or her family by reason of the careful and skillful use by the defendant of the freight station or the tracks in the street in front of the plaintiff's property, and the burden of proof is upon the plaintiff to point out to the jury, by satisfactory testimony, the acts of the defendant which were unlawful and unauthorized, if any such there were.

"3. The defendant was entitled to make such careful use of the tracks between 9th and 10th streets on Maryland avenue as may have been necessary for the reasonable use and enjoyment of its freight depot or station opposite the plaintiff's premises and on square 386.

"4. The defendant was authorized and empowered to unload railroad iron upon the surface of the streets in front of the plaintiff's premises for the purpose of repairing its tracks in front of the plaintiff's premises and on square 386.

"5. The defendant possessed the lawful right in the conduct of its business to place its trains containing cars loaded with cattle, hogs, or other animals or vegetables, fruit, fertilizers, or other odoriferous freight on the tracks in front of the plaintiff's premises for such a reasonable time as may have been necessary to enable the defendant to take cars out of and to put cars into such trains.

"6. The defendant possessed the lawful right to use the several tracks on Maryland avenue between 9th and 10th streets for carefully passing and moving thereon its trains with passengers or freight, either loaded or empty, north and south, and for any injury or inconvenience unavoidably caused by such passing and moving of trains the defendant is not liable.

" 7. The jury in estimating damages are confined to the matters and things complained of by the plaintiff, which they may find from the evidence occurred on Maryland avenue, in front of the plaintiff's premises and between the west line of 9th street and the east line of 10th street.

" 8. The defendant company has a lawful right to the reasonable and careful use of the tracks between 9th and 10th streets on Maryland avenue and to make up, as well as to break up, its trains, and no damage can be assessed against the defendant for any inconvenience or damages caused by such use of said tracks.

" 9. Upon the pleadings and evidence in this case the plaintiff is not entitled to recover anything for any injury or inconvenience which may have been caused by smoke from locomotive engines which were being used with reasonable care and skill in moving and switching cars into or out of trains or into or out of its stations or depots.

" 10. The plaintiff, upon the pleadings and evidence in this case, is not entitled to recover anything on account of or by reason of smoke, soot, or cinders expelled from or noises made by locomotive engines or trains of the defendant while carefully passing and repassing over the railroad tracks on Maryland avenue in front of the plaintiff's property or while engaged in carefully and skillfully switching or moving cars into or out of the said part of Maryland avenue.

" 11. The defendant had the legal right to the unlimited use of the tracks in the vicinity of the freight depot in front of the plaintiff's premises for the purposes—the use of its freight depot between Ninth and Tenth streets, opposite the plaintiff's premises, provided such tracks were carefully and skillfully used by the defendant.

" 12. The defendant, so far as the plaintiff is concerned, was authorized by law to construct as many freight stations and depots as its proper officers may have deemed necessary, and to construct, maintain, and use as many tracks near them as was by such officers deemed necessary for the con-

venient conduct of the business, and the defendant possessed the legal authority to construct and maintain the several tracks in front of the plaintiff's premises and to use them for the proper and careful conduct of its business, and from inconvenience resulting from such use the plaintiff has no right to recover damages on the pleadings and evidence in this case, and before the plaintiff can have a right to recover, he must show by satisfactory evidence the acts of the defendant which were unlawful, and that the plaintiff was specially injured thereby.

" 13. The defendant possessed the lawful right to carefully use the tracks in front of the plaintiff's premises on Maryland avenue between Ninth and Tenth streets so far as the same was necessary for the careful use of its stoneyard and cattle shoot therein at or near Fourteenth street.

" 14. Upon the pleadings and evidence in this cause the plaintiff cannot recover anything for any damage or inconvenience caused by cars left standing upon the space in question in front of his [her] premises, if such cars were left standing there in connection with and for the purposes of the reasonable and careful management of the defendant's trains or putting in or taking out of the trains.

"15. Upon the pleadings and evidence in this case the plaintiff is not entitled to recover anything for injury or inconvenience caused by cars loaded with hogs, cattle, or other live stock or empty hog and cattle cars left standing on said space between Ninth and Tenth streets on Maryland avenue, if such cars were so left there in connection with or for the purpose of the reasonable and skilful conduct of its trains and business

" 16. If the jury shall find for the plaintiff, then, in estimating the damages, the jury cannot allow to the plaintiff anything for interruption in passing or repassing caused by cars standing on the said avenue between Ninth and Tenth streets, nor for injury to the dwelling house of the plaintiff."

There seems to be very considerable misunderstanding on the part of the counsel for the appellant as to which of

the sixteen instructions requested by him were granted and which refused. The printed record states that only the first of the sixteen was allowed, and that all the others were refused. A stipulation, however, has been filed in this court, which shows that the record has not been properly made up, and from which it appears that those numbered 3, 4, 6, 7 and 13, also, were granted as well as No. 1. And moreover, No. 16 likewise appears to have been granted with a qualification to which the defendant did not except. And yet in his brief, for the case was not argued orally before us, the appellant says:

"The appellant invites the attention of the court to all of the instructions asked on behalf of the defendant and refused by the court, and found at pages 146, 147 and 148 (of the record), except the instructions numbered 4, 7, 12 and 16. These four instructions are not of sufficient importance to bring to the attention of this court."

And elsewhere in the brief there is this statement: "But the defendant waives all objections to the prayers numbered 4, 7, 12 and 16," meaning, we presume, that he abandons all objection to the refusal to give these instructions. Probably we may fairly conjecture that out of the nine of the sixteen instructions prayed by him which were refused, the appellant only insists upon his exceptions to the refusal to grant those numbered 2, 5, 8, 9, 10, 11, 14 and 15.

It is to be noticed, also, that, while the appellant reserved an exception to the fifth instruction given on behalf of the plaintiff below respecting the measure of damages, no assignment of error is based upon it; and it is presumed that the exception has been abandoned.

Briefly summarized, the result of the instructions requested on behalf of the appellant and which were refused by the court below, is that they claim for the railroad company practically an unlimited right to use the street in front of the plaintiff's premises as a freight yard for the loading and unloading of their cars, and as a place for the storage of their cars, whether loaded or empty, and as a convenient

place for making and breaking up their trains; and they are not liable to any private person for any injury resulting to such person from such use of the street. On the other hand, the position of the appellee is that the appellant has no lawful warrant for any such use of the streets of the city; and that for a nuisance resulting from such use to the special injury of the plaintiff, the plaintiff is entitled to recover damages to the extent of such special injury.

In view of the decision of the Supreme Court of the United States in another suit in which the present appellant was also the defendant, in consequence of an alleged nuisance greatly less aggravated than that which constitutes the burden of complaint here, namely, the case of *The Baltimore and Potomac Railroad Company* v. *Fifth Baptist Church*, 108 U. S., 317, it does not appear to us that there are any questions here that are left open for our determination. That was a very greatly stronger case for the railroad company than the present. There the company had purchased and entered upon a lot of ground which became its own exclusive private property, and which, in consequence of such ownership, it became entitled to use for any lawful purpose and in any lawful manner whatever within the scope of its business. It purchased the property and used it for an engine house. But it adjoined a church; and the steam and smoke and soot and cinders from the engine permeated the church, and proved an intolerable nuisance to the members of the congregation. In a decision rendered for a unanimous court, by Mr. Justice Field, it was held that the railroad company had no right to carry on its business, however legitimate that business might be, in such a manner as to become a nuisance to adjacent private owners. Says the court in that case:

" If the facts are established which the evidence tended to prove, and from the verdict of the jury we must so infer, there can be no doubt of the right of the plaintiff to recover. The engine house and repair shop of the railroad company, as they were used, rendered it impossible for the

plaintiff to occupy its building with any comfort as a place of worship. The hammering in the shop, the rumbling of the engines passing in and out of the engine house, the blowing off of steam, the ringing of bells, the sounding of whistles, and the smoke from the chimneys, with its cinders, dust and offensive odors, created a constant disturbance of the religious exercises of the church. The noise was often so great that the voice of the pastor while preaching could not be heard. The chimneys of the engine house being lower than the windows of the church, smoke and cinders sometimes entered the latter in such quantities as to cover the seats of the church with soot and soil the garments of the worshippers. Disagreeable odors, added to the noise, smoke and cinders, rendered the place not only uncomfortable, but almost unendurable as a place of worship. . . . Plainly the engine house and repair shop, as they were used by the railroad company, were a nuisance in every sense of the term. They interfered with the enjoyment of property which was acquired by the plaintiff long before they were built. . . . That is a nuisance which annoys and disturbs one in the possession of his property, rendering its ordinary use or occupation physically uncomfortable to him. For such annoyance and discomfort the courts of law will afford redress by giving damages against the wrongdoer, and when the cause of the annoyance and discomfort are continuous, courts of equity will interfere and restrain the nuisance. *Crump* v. *Lambert*, L. R., 3 Eq., 409. . . .

"It is no answer to the action of the plaintiff that the railroad company was authorized by act of Congress to bring its track within the city of Washington, and to construct such works as were necessary and expedient for the completion and maintenance of its road, and that the engine house and repair shop in question were thus necessary and expedient; that they are skilfully constructed; that the chimneys of the engine house are higher than required by the building regulations of the city; and that as little smoke and noise are caused as the nature of the business in them will permit.

" In the first place, the authority of the company to construct such works as it might deem necessary and expedient for the completion and maintenance of its road, did not authorize it to place them wherever it might think proper in the city, without reference to the property and rights of others. As well might it be contended that the act permitted it to place them immediately in front of the President's house or of the Capitol. Indeed, the corporation does assert a right to place its works upon property it may acquire anywhere in the city.

" Whatever the extent of the authority conferred, it was accompanied with this implied qualification, that the works should not be so placed as by their use to unreasonably interfere with and disturb the peaceful and comfortable enjoyment of others in their property. Grants of privilege or powers to corporate bodies, like those in question, confer no license to use them in disregard of the private rights of others, and with immunity for their invasion. The great principle of common law, which is equally the teaching of Christian morality, so to use one's property as not to injure others, forbids any other application or use of the rights and powers conferred.

" Undoubtedly a railway over the public highway of the District, including the streets of the city of Washington, may be authorized by Congress; and if, when used with reasonable care, it produces only that incidental inconvenience which unavoidably follows the additional occupation of the streets by its cars with the noises and disturbances necessarily attending their use, no one can complain that he is incommoded. Whatever consequential annoyance may necessarily follow from the running of cars on the road with reasonable care, is *damnum absque injuria.* The private inconvenience in such case must be suffered for the public accommodation.

" But the case at bar is not of that nature. It is a case of the use by the railroad company of its property in such an unreasonable way as to disturb and annoy the plaintiff in the

occupation of its church to an extent rendering it uncomfortable as a place of worship. It admits indeed of grave doubt whether Congress could authorize the company to occupy and use any premises within the city limits in a way which would subject others to physical discomfort and annoyance in the quiet use and enjoyment of their property, and at the same time exempt the company from the liability to suit for damages or compensation, to which individuals acting without authority would be subject under like circumstances. Without expressing any opinion on this point, it is sufficient to observe that such authority would not justify an invasion of other's property to an extent which would amount to an entire deprivation of its use and enjoyment, without compensation to the owner. Nor could such authority be invoked to justify acts, creating physical discomfort and annoyance to others in the use and enjoyment of their property, to a less extent than entire deprivation, if different places from those occupied could be used by the corporation for its purposes, without causing such discomfort and annoyance."

To this very able opinion of Mr. Justice Field we can add nothing; nor would we attempt to take one iota away from it. It is clear, cogent and conclusive; and it covers the whole contention of the parties in the present case.

Were the claim of the appellant to the unlimited use of the street in front of the plaintiff's premises as well established as we regard it unfounded, it would not, in the light of the decision of the Supreme Court, and of the principle of common right which that decision only enforces, justify this railroad company in conducting its business in such a way as to constitute an intolerable private nuisance. But we desire to be distinctly understood as ratifying the rule of law laid down by the court below when it is stated that this railroad company had no warrant of law to convert the public street into a freight yard, or into a storage yard, or into a place for the making and breaking up of its trains. What the legislative power has given to the company is simply the

right which individuals have by the common law, the right of transit over certain streets of the city—substantially that and nothing more. Individuals, in their use of the right of transit, may not convert the streets into freight yards, or into places of storage for their wagons, or into stables for their horses. When the right of transit is given to a railroad company, why should it be construed to mean any more than it does in the case of an individual, due regard being had to the different instrumentalities used? The rule laid down in this case by the trial court is in accordance with reason and sustained by the overwhelming current of authority. *Fertilizing Co.* v. *Hyde ·Park*, 97 U. S., 659; *Cooper* v. *N. British Railway Co.*, 35 Jurist, 295; *Randle* v. *Pacific R. R. Co.*, 65 Mo., 325; *Penn. R. R. Co.* v. *Commissioners*, 21 Penn. St., 22.

The fourth count of the plaintiff's declaration raises the question whether the railroad company had the right under the act of Congress to put down three or more tracks upon Maryland avenue; and in several of the instructions this question is more or less involved. We do not deem it necessary to decide it here; and we only refer to it for the purpose of having it distinctly understood that nothing contained in this opinion should be construed as intended directly or indirectly to determine that question. Its determination is not necessary for a decision of this case.

*We are of opinion that there was no error in the rulings in this case by the court below; and we therefore affirm the judgment of that court with costs.*