

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

Leon Pretzfelder, of Washington, D. C., and Joseph D. Milenky, of Detroit, Mich., for plaintiff in error.

Charles H. Houston, of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and HITZ and GRONER, Associate Justices.

HITZ, Associate Justice.

This case comes here by writ of error to the Municipal Court of the District of Columbia to review a judgment for defendant in an action for negligence.

The plaintiff below, plaintiff in error here, is a housewife; the defendant is an employment agent, licensed and bonded under an act of Congress regulating employment agencies in the District of Columbia. The plaintiff applied by telephone to the defendant for a maid servant. The defendant sent one to the plaintiff's house, who disappeared the following morning contemporaneously with certain jewelry, valued at approximately $1,000, which the plaintiff alleges was stolen by the servant.

The declaration sets up the statutory duties laid upon employment agents; negligent failure to perform them by the defendant; and loss resulting therefrom to the plaintiff.

The pleas assert no duty owing to the plaintiff because no fee was paid; full performance of the duty; contributory negligence; and assumption of risk by the plaintiff.

By stipulation, the case was tried to the court without a jury, and resulted in a judgment for the defendant, with costs. This judgment is attacked here as being unsupported in law, in fact, or in evidence.

The statute involved is the Employment Agency Act of June 19, 1906, c. 3438, 34 Stat. 304, D. C. Code 1929, T. 20, Part 9, §§ 941–951. This statute by prohibiting unlicensed employment agents gives a monopoly to its licensees, and requires written application to the Commissioners of the District of Columbia for such license, and, when issued, requires the licensee to keep certain registers and records; authorizes him to charge certain fees; and provides for his giving a bond, on which the surety is secondarily liable to any person aggrieved by the misconduct of such licensed agent, in addition to the public penalties provided for agents violating the act.

We regard the plaintiff's claim as resting mainly upon the defendant's alleged negligence in respect of the statutory duty to record the servant's address and to investigate her references. And there is evidence in the record tending to show that, if either of these requirements of the statute had been performed in the spirit of the statute, this servant would not have been sent to "a private family or employed in a fiduciary capacity." For the detective officer detailed to investigate the case testified that he recognized the description of the servant as that of a certain woman in the habit of procuring a servant's position for purposes of theft; that the Detective Bureau had six or seven such complaints against her; that she was under indictment; but apparently they had not found her at the time of the trial in December, 1929, although this theft was reported immediately after its occurrence.

The language of the statute touching these points is that it shall be the duty of the licensed agent to record and preserve "the name and address of the applicant to whom employment is promised or offered, the amount of the fee received, and, whenever possible, the names and addresses of former employers or persons to whom such applicant is known."

And again: "It shall be the duty of every licensed person, whenever possible, to communicate orally or in writing with at least one of the persons mentioned as references for every applicant for work in private families or employed in a fiduciary capacity, and the result of such investigation shall be kept on file in such agency: Provided, That if the applicant for help voluntarily waives in writing such investigation of references by the licensed person, failure on the part of the licensed person to make such investigation shall not be deemed a violation" of the act.

The plaintiff testified that, when she called the defendant's office for a servant on March 21, 1928, the defendant told her that she had a woman in the office whom she recommended, and whom she sent; that upon her arrival she asked for references, and, the servant having none, plaintiff accepted her because sent and recommended by the defendant.

The next morning the servant and the jewelry disappeared; the plaintiff notified the police, and went with an officer to the address given her by the servant, where they were told the servant was unknown. This policeman and a detective officer testified that they verified the address given the plaintiff by the servant from the records of the defendant, that those records contained no other information relating to any investigation of the servant or her references, and that the defendant told them she could give no information about her, except the address which was furnished her by the servant.

The defendant testified that in February, 1927, the servant was in her office when a Major Humphrey came there for a servant, and took this one with him to Quantico; that a month later he casually dropped into her office, and volunteered the information that the servant was "all right"; that in March, 1928, the servant returned to her office, saying she had just left Major Humphrey, and, while she was sitting there, a call came in, and she sent this servant to a Capt. Greenlee; and that three days later Mrs. Greenlee, asking for another servant, stated that the one in question, though leaving, was "all right." On March 21, 1928, the defendant sent the servant to the plaintiff in answer to her call, at that time making no investigation of the servant, her address, or her references, but relying on what had been told her by Major Humphrey and Mrs. Greenlee.

In our discussion of the case we have considered the testimony of the defendant, rejected as hearsay by the trial court, concerning her conversations with Major Humphrey and Mrs. Greenlee. This testimony was not objected to when offered and received, and, since the statute requires the agent to communicate with persons mentioned as references by applicants, such a communication may be initiated by such a person, and the agent's testimony that it was so initiated is not hearsay of the statutory duty to communicate.

But, however initiated, the result of these alleged communications was not recorded and filed in the agency, as the statute re-

quired, and consequently was not available to the officers in their search, nor was it mentioned to them by the defendant when she could give no information about the servant except her wrong address. In this connection, the defendant testified that, while she knew the law required her to investigate references, she did not know it required her to record the results thereof.

From the foregoing testimony, it is clear that the defendant originally accepted and registered this servant with no investigation or verification of the address given her, and with no investigation or record of any references, and that she finally sent her to the plaintiff with no verification of the address and no investigation or record of references, aside from the alleged statements of Major Humphrey and Mrs. Greenlee.

We are of opinion that such perfunctory compliance with the letter of the statute as this record shows does not satisfy the statute, and that, if injury results from a failure to do the things which it is the obvious purpose of the statute to require, or from a failure to make a reasonable effort in good faith to do them, the licensed agent is answerable in damages.

When the statute requires the agent to register the address of an applicant for work, the true address must be registered, so far as reasonable investigation can reveal it. And the giving of a false address should put the agent on notice and inquiry. But here a false address was accepted, and carried in the register for more than a year, when the slightest effort at verification would have revealed its falsity.

And so with respect to references, of which there were none when the servant was originally registered, and, if Major Humphrey and Mrs. Greenlee thereafter volunteered statements that the servant was "all right," a record thereof should have been filed, and the details thereof should have been available to the officers in their search.

"It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers." Holy Trinity Church v. U. S., 143 U. S. 457, at page 459, 12 S. Ct. 511, 512, 36 L. Ed. 226; Am. Tob. Co. v. Werckmeister, 207 U. S. 284, 28 S. Ct. 72, 52 L. Ed. 208, 12 Ann. Cas. 595.

The paramount rule in construing statutes is to give effect to the intention of the Legislature, unless that is constitutionally in-

hibited, and, in doing this, courts are not always confined to a literal reading, but may consider the purpose of the act. And, while penal statutes are to be strictly construed, they are also to be interpreted in view of the evils sought to be overcome, and to effectuate the statute rather than to destroy it. U. S. v. Lacher, 134 U. S. 624, 10 S. Ct. 625, 33 L. Ed. 1080; Northern Securities Co. v. U. S., 193 U. S. 197, 358, 24 S. Ct. 436, 48 L. Ed. 679; Carr v. Ry. Co., 44 App. D. C. 533, Ann. Cas. 1918D, 818; Washington Terminal Co. v. District of Columbia, 36 App. D. C. 186; District of Columbia v. Dewalt, 31 App. D. C. 326.

The mere recording of any address offered by any applicant, with no verification thereof, with no demand for, or investigation of, references, does not comply with the statute. If a servant so registered is sent to an employer by a licensed agent, and damage thereby results to the employer, the very injury has occurred which the statute intended to prevent, and consequently the violation of the statute is the proximate cause of the injury. 20 R. C. L. 43; Norman v. Coal Co., 68 W. Va. 405, 69 S. E. 857; 31 L. R. A. (N. S.) 504; Leonard v. Doherty, 174 Mass. 565, 55 N. E. 461.

We consider that the requirements of the statute include a reasonable effort in good faith to verify statements made by applicants and to investigate and record their references in return for the monopoly conferred by the license of the statute.

If this license is of so little value when obtained as not to compensate the agent for the labor and expense of performing such statutory obligations—as the defendant contends—it need not be applied for, and it can always be surrendered.

The judgment is reversed, with costs, and the case remanded for further proceedings not inconsistent with this opinion.

Reversed.