Jessie O. Cooney, Administratrix of Estate of Earl T. Cooney, Deceased, Appellee, v. F. Landon Cartage Company, Appellant.

Gen. No. 9,537.

Opinion filed February 7, 1941. Rehearing denied March 17, 1941.

Lord, Bissell & Kadyk, of Chicago, and Weaver & Weaver, of Wheaton, for appellant; C. H. G. Heinfelden and Bruce S. Parkhill, both of Chicago, and Harry G. Weaver, of Wheaton, of counsel.

Sidney F. Blanc and Thomas J. Lawless, both of Chicago, and Alschuler, Putnam & Johnson and Sears, O'Brien & Streit, both of Aurora, for appellee; Edward F. Streit, of counsel.

Mr. Presiding Justice Wolfe delivered the opinion of the court.

This is an action for damages for the death of Earl T. Cooney, plaintiff's intestate, who was killed in an automobile collision on March 6, 1936, when the automobile which he was driving collided with the truck of the defendant, which was parked on the outer lane of traffic of a four-lane highway. Cooney was killed instantly, and the car he was driving was demolished.

The case has been tried twice. The original complaint consists of four counts. The first trial resulted in a verdict and judgment for $7,000 for the plaintiff upon the claim for the wrongful death of plaintiff's intestate. The case was appealed to this court and reversed without passing upon the merits, and the cause was remanded. After the cause was remanded, the case was again tried before a jury who rendered a verdict in favor of the plaintiff for $7,500. The defendant entered a motion for judgment notwithstanding the verdict and for a new trial, and in arrest of judgment. All of these motions were overruled and judgment entered on the verdict, and the appeal from this judgment is prosecuted to this court.

The first count of the original complaint filed in the case charged that the defendant, F. Landon Cartage Company, was a corporation organized under the laws of the State of Illinois, and was a common carrier engaged in transporting property by motor truck for hire; that on March 6, 1936, it was operating a motor truck in an easterly direction along a public highway known as State Route 64, in DuPage county north of the city of Wheaton, Illinois; that on the same day the plaintiff's intestate, Earl T. Cooney, was driving an automobile owned by the plaintiff, Jessie O. Cooney, in an easterly direction on the same highway and at all times was in the exercise of due care and caution for his own safety; that while the said Earl T. Cooney was driving the automobile of the plaintiff along said high-

way, the defendant at said place, during the night, caused and permitted its motor truck to stop and stand on said highway without leaving any person in charge thereof, or with, or about the same, and then and there carelessly and negligently and in violation of section 41D of the Motor Vehicle Act of Illinois, failed and neglected to give warning thereof, by displaying burning flares or portable lights in the immediate vicinity of said motor truck; that said motor truck was not stopped, as aforesaid, for the purpose of taking on passengers or complying with traffic regulations; that by reason of said carelessness and negligence in failing to place flares as aforesaid, the collision occurred and Earl T. Cooney sustained injuries, which resulted in his death. Before the second trial started, the defendant made a motion to strike the first count, because the law requiring flares to be displayed when a truck was stopped upon a paved road had been repealed, and there is no saving clause in the repealing act, therefore the case must be decided upon the law as existing at the time of the second trial. The court sustained this motion and the first count of plaintiff's complaint was stricken. The plaintiff, now appellee, has assigned cross error on the ruling of the court in sustaining the motion to strike. Numerous cases have been cited by the appellee as sustaining their contention that it was error for the court to strike this count. The case of *People ex rel. Eitel v. Lindheimer,* 371 Ill. 367, we think is decisive of the question raised. The court in the opinion in the above-cited case on page 373 use this language: ''That the legislature cannot pass a retrospective law impairing the obligation of a contract, nor deprive a citizen of a vested right, is a principle of general jurisprudence, but a right, to be within its protection, must be a vested right. It must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present

or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another. If, before rights become vested in particular individuals, the convenience of the State induces amendment or repeal of the laws, these individuals have no cause to complain. (*People v. Clark, supra; Dodge v. Board of Education,* 364 Ill. 547; I Lewis' Sutherland on Stat. Const. (2d ed.) sec. 284; 6 R. C. L. 308, 309.) A retrospective statute affecting vested rights is very generally considered in this country as founded on unconstitutional principles and consequently inoperative and void; but this doctrine is not understood to apply to remedial statutes of a retrospective nature not impairing contracts or disturbing absolute vested rights. (*People v. Clark, supra; Fairfield v. People,* 94 Ill. 244.) The legislature has the undoubted right to repeal all legislative acts which are not in the nature of a private grant. (*Wall v. Chesapeake and Ohio Railway Co.* 290 Ill. 227; *Smolen v. Industrial Com.* 324 id. 32; *Sharp v. Sharp,* 213 id. 332.) The unconditional repeal of a special remedial statute without a saving clause stops all pending actions where the repeal finds them. If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal. The reviewing court must dispose of the case under the law in force when its decision is rendered. (*Merlo v. Johnston City and Big Muddy Coal Co.* 258 Ill. 328; *People v. Clark, supra; South Carolina v. Gaillard,* 101 U. S. 433; Cooley's Const. Lim. (2d ed.) 381.) We have had several occasions to consider cases involving those principles.''

The appellees insist that section 4 of chapter 131, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 27.16], operates as a saving clause in this case, and therefore they had a right to go to trial on count one. The same question was before this court in the case of *People v. Sper-*

*oni,* 273 Ill. App. 572. In that case the law relative to the repeal of statutes, is thoroughly discussed and what was said there, is applicable here. The right for plaintiff to recover damages for the death of Earl T. Cooney was purely statutory. The act repealing the former statute had no saving clause, and it is our conclusion that the court properly held that the first count of plaintiff's complaint should be stricken.

The evidence shows that the defendant, by its servant, Joe Fink, was driving the truck in question along a hard-surfaced highway; that he noticed the engine began to sputter and he "jiggled" the carburetor, and the truck rolled ahead a short distance and stopped; that he made no effort to drive off of the pavement, but stopped with all of the wheels on the pavement. The road was a four-lane paved highway, 40 feet wide with a right of way of 30 feet on either side of the pavement and with 10 to 12 foot shoulder on each side of the pavement; that this shoulder had been frozen for at least 30 hours, as the thermometer had been below the freezing point steadily for that length of time.

The case went to trial upon the second and fifth counts of the declaration. Count two charges general negligence of the defendant and the injury of the plaintiff's intestate. Additional count five alleged the duty of the defendant to exercise care on its behalf in the management of the truck which they failed to do, and especially charged that they were operating their truck on State Route No. 64, outside of a business or residence district, and failed and neglected to stop, or park its motor vehicle truck, contrary to section 185 of Ill. Rev. Stat., ch. 95½ [Jones Ill. Stats. Ann. 85.217], which states that it was the duty of the defendant to carry on the said truck and semitrailer at least three flares or electric lanterns capable of producing warning lights, etc.; and that the defendant failed to carry such flares or signals and as a result

thereof, the plaintiff was injured. The defendant filed its answer denying all the material allegations of the complaint except the facts that they were the owner of the truck in question, and the driver thereof, was their agent.

The collision occurred between six and seven p.m. central standard time. There is no question but that it was getting dark. A short time before the collision, seven men in a Buick car left St. Charles, Illinois, and drove east on route 64 for the Golden Glove Fight at the Stadium in Chicago. Four of these men were called as witness at the trial. When the Buick car was near St. Charles, a Plymouth Sedan passed it on the left. It was the car that Earl T. Cooney was driving at the time he met his death. Both cars had their lights burning at the time. The Buick followed the Plymouth until the time of the accident. For 5 or 6 miles before the accident occurred, the driver of the Buick had his car in the north, or second lane of the traffic going east. Earl T. Cooney was driving the Plymouth car in the right-hand or southern lane of traffic. After the Plymouth passed the Buick, both cars drove approximately at the same speed, and the Buick followed at approximately 300 feet behind the Plymouth. The speed was estimated all the way from 45 to 70 miles per hour. The driver of the Buick car first saw the red lights of the truck when he was about 3 to 4 blocks away. When he was about two blocks away, or approximately 500 feet, he said he was able to determine that the truck was not moving, and at that time, the Plymouth car was about 200 feet from the truck. Just before the crash of the Plymouth car with the truck, the driver of the Buick turned his car into the westbound lane of traffic, as he said, to give the Plymouth a chance to slow down and turn into the second or next lane to the one on which the truck was stopped. The Plymouth drove head on into the back end of the truck, apparently without swerving to the

right or to the left. Afterwards there were skid marks on the pavement estimated to be at least 100 feet in length that was caused by the Plymouth. The Plymouth struck the right-hand rear corner of the trailer near the right edge of the pavement. Part of the lights on the back of the truck were broken off. The Plymouth car was driven underneath the trailer and badly damaged. The right wheel of the trailer was torn from the frame. At the time of the crash, there was no other traffic in the immediate vicinity of the truck. By the force of the collision, Earl T. Cooney was killed.

After the truck stalled on the pavement, the driver had ascertained that he was out of gasoline. He states that he looked at the back of the truck to see if the lights were all on and that they were. He looked at the headlights to see if they were on and the lights at the top of the front were all on. He then tried to flag a ride to get to a filling station and could not do so. He started to walk west, but decided there was a closer station to the east. He went to the one to the east and was getting gasoline when he heard the crash. Someone took him down to the place where he had his truck, and he found that there had been a collision. The evidence clearly establishes the fact that there was at least four red lights burning on the back of the truck at the time of the collision.

Under the evidence, as given at the trial, the defendant seriously contends that plaintiff's intestate was guilty of contributory negligence, and even conceding, which they do not, that the driver of the truck was negligent in the way he left his truck on the highway, the plaintiff is barred from a recovery in this case.

The parties were called as witnesses that were riding in the Buick car at least 300 feet back of Earl T. Cooney, as he approached the truck in question. The majority of these people saw the lights on this truck at least four or five hundred feet from it. When they

could see these lights, what was there to prevent Earl T. Cooney from seeing them in time to avoid a collision? There was no one approaching from the east and no one near him in the second eastbound lane of traffic, but from the evidence, it appears that he did not see the truck at all until within about 100 feet from it. This is indicated by the skid marks of his car. This court is reluctant to set aside a verdict of a jury for the reason that the evidence shows that the plaintiff's intestate was guilty of negligence which was the contributing cause to the injuries, but in this case it seems to us, that if plaintiff's intestate had been observing the road ahead, he certainly should have seen the lights of the truck in the road in time to avoid a collision. Under the evidence in this case, the judgment cannot stand.

There are numerous other questions raised, both by appellant and appellee, but since we have arrived at the conclusion that the evidence shows that the plaintiff's intestate was guilty of contributory negligence which caused his death, we do not deem it advisable to discuss the other questions. The judgment of the trial court is reversed and the cause remanded.

*Reversed and cause remanded.*