## MILLER et al. v. ADVANCE TRANSP. CO.
### No. 7744.

Circuit Court of Appeals, Seventh Circuit.
March 2, 1942.

Rehearing Denied April 6, 1942.

Joseph H. Hinshaw and Oswell G. Treadway, both of Chicago, Ill., for appellant.

Lloyd D. Heth, of Chicago, Ill., for appellees.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from judgments, entered April 25, 1941, awarding damages to each of the five named plaintiffs for personal injuries occasioned by the collision of a passenger motor vehicle, in which plaintiffs were riding, with the rear of a truck owned and operated by the defendant.

The contested issues, as stated by the defendant in its brief are:

"Whether or not the trial court erred in refusing to instruct the jury to return verdicts finding the defendant not guilty and in overruling the defendant's motions for judgments notwithstanding the verdicts. The defendant contends:

"(a) That the evidence is insufficient to support the verdicts, and

"(b) That there is a fatal variance between the allegations of the plaintiffs' complaint and the proof adduced on the trial."

Plaintiffs present the further contention that defendant's motions for a directed verdict made at the close of plaintiffs' case, and at the close of all the evidence, specified no grounds therefor, and for that reason were properly overruled. This contention is predicated upon Rule 50(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which provides: "* * * A motion for a directed verdict shall state the specific grounds therefor." It is further contended that the motions for directed verdict being insufficient, it follows that defendant's motion after verdicts for judgments, notwithstanding the verdicts, must also fail. In view of our conclusion that the cases were properly submitted to a jury, we find no occasion to decide or discuss the questions presented by the plaintiffs in this respect.

Originally three suits were commenced by the plaintiffs in the State Court of Cook County, one by Miller, one by Foster, and the other by Browne, Shoffner and Wagner. The causes were removed, on application of the defendant, to the United States District

Court where they were consolidated and tried together. The jury rendered verdicts for each of the plaintiffs, upon which were entered the judgments in controversy.

The collision, resulting in the damages complained of, took place shortly after 10:00 o'clock on the evening of April 4, 1939, on Skokie Highway, also known as U. S. Route 41, at a point at or near the corporate limits of the Village of Glencoe.[1] Skokie is a paved four-lane highway, forty feet in width, substantially level and runs in a general northerly and southerly direction. At the time of the collision, there were standing either on the pavement for southbound traffic, or on the shoulder off that side and headed south, four transport trucks. These trucks were thirty-five feet in length and stood about fifteen feet apart. It is to be observed that these were not trucks of the defendant, but it seems important to make some statement concerning them. The first of these to arrive, owned by the Bartzen Transportation Company, stopped on the west shoulder of the highway. When the driver attempted to start, he found its wheels had sunk into the shoulder and he was unable to return it to the pavement. Shortly thereafter, a Checker Express truck, also traveling south, stopped ahead of the Bartzen truck and attempted to pull the latter on to the pavement. Later, a third truck, belonging to the Trans-American Line, arrived from the north and stopped a short distance south of the Checker truck. Thereafter, another truck, the Gateway, also from the north, arrived and stopped a short distance south of the Trans-American truck.

In the meantime, three trucks belonging to the defendant, and traveling north, came to a stop on the pavement in the east traffic lane for northbound traffic. When they came to a stop, the rear end of defendant's truck which was furthest to the south (the one with which plaintiffs' car collided) was thirty to forty feet north of the rear end of the Bartzen truck. The only reason for the stoppage of defendant's truck was to assist in getting the Bartzen truck back to the pavement. Reid, the driver of the truck with which plaintiffs' car collided, after stopping, went to the west side of the highway to help protect southbound traffic. The drivers of the southbound trucks had placed a number of kerosene torches and red fusees, perhaps

six of the former and from six to ten of the latter, some on the pavement and some on the shoulder of the southbound portion of the highway.

Plaintiffs, who resided in Waukegan, were, at the time in question, returning home from Chicago in a Lincoln Zephyr car owned and driven by the plaintiff Miller. The plaintiff Foster was seated in the front seat with Miller and the other three plaintiffs were in the back seat. All the plaintiffs were witnesses at the trial and the substance of their testimony is that they traveled north on Skokie Highway in the east lane for northbound traffic at a rate of speed not in excess of 45 miles per hour; that at a point about 300 to 500 feet south of the point of collision they noticed the red lights on the west side of the highway; that when they were about even with the truck furthest south on the west side of the highway, there was a sort of fog or haze, produced by the fumes from the kerosene torches and fusees, extending over and across the east side of the highway, which impaired their vision; and that after discovering the situation, the speed of the car was reduced to about ten miles per hour. The atmosphere was variously described as murky or reddish from the reflection of the fusees, as sort of an Indian Summer haze, or as a slight smoke or fog. Foster described the situation just before the crash, thus: " * * * We had passed the truck which was in the ditch. I had turned my vision forward again and I saw a small indistinct light on the right-hand side of the pavement ahead of us flashing from left to right. Instantly I thought there was something wrong. I made a movement to nudge Mr. Miller, and looking ahead I saw an object in the center of the lane in which we were traveling. I raised my hand to throw off my glasses. At that instant we hit something which afterwards proved to have been a truck."

All the plaintiffs testified that they were looking in the direction in which they were traveling, and saw no light on the rear of the truck with which their car collided, or any other light or warning indicating the presence of the truck, except Foster, who saw a flashlight held by a person about eight or ten feet to the rear of the truck. At that time plaintiffs were about 65 feet away. Also, just before the collision, there was a man in the center of the east south-

---

[1] As to whether the collision occurred within or without the incorporated limits of the Village of Glencoe is a disputed question, discussed hereinafter.

bound lane holding a fusee. Miller, at the time of the collision and for sometime prior thereto, had been driving with what he described as "town lights," also described as "city driving lights," and referred to by the defendant as "dimmers." There is no evidence as to how far an object could be discerned by such lights. There were, of course, certain discrepancies in the testimony given by various witnesses for the plaintiffs, but what we have related so far, we think, is a rather accurate and fair statement of the situation, briefly stated. Two matters are seriously controverted: (1) Were there any lights on the rear of the truck with which plaintiffs' car collided, and (2) did the collision occur within or without the incorporated limits of the Village of Glencoe? These questions are pertinent in view of certain provisions of the Illinois Statute, which were charged to have been violated. At this point, therefore, it seems material to refer to the charges made in the complaints. (The complaints in each of the three cases are identical so far as concerns the charges of negligence.)

Paragraph 9(c) charges a violation of Section 104; 9(d) a violation of Section 103; 9(f) a violation of Section 88, and 9(h) a violation of Section 121, all of the Uniform Act regulating traffic on highways in Illinois. Chap. 95½, §§ 201, 200, 185, 218, Illinois Revised Statutes, 1941. Section 104 requires motor transports operated outside the limits of cities, villages and incorporated towns, during the period from sunset to sunrise, to display on the rear thereof "three red lights plainly visible at a distance of at least 500 feet." Section 103 requires every motor vehicle, trailer or semi-trailer to exhibit in the rear a lighted lamp so situated as to throw a red light visible for at least 500 feet in the reverse direction. Section 88 provides it is unlawful to stop, park or leave any vehicle upon any highway outside of a business, residence or suburban district when it is practical to stop, park or leave such vehicle off of the paved part of such highway. Section 121 requires a motor truck operating outside of a business or resident district to carry a sufficient number of flares, electric lanterns or other signals capable of producing three warning lights, each visible for a distance of 500 feet, and when such truck is disabled and can not be immediately removed from the traveled portion of the highway, that one of such signals be placed 100 feet in advance, another 100 feet to the rear and another upon the roadway side thereof. There is some dispute as to whether Section 88 is limited to highways outside of the incorporated limits of a city or village.

The complaints alleged that the collision occurred outside the limits of any city, village or incorporated town. By its answer, defendant expressly admitted such allegation. Defendant now contends, however, that the evidence discloses the collision occurred within the incorporated limits of Glencoe. In support of this statement, a map, showing various landmarks at and near the point of collision, is relied upon. It is true this map is in evidence, but it is also true that the court instructed the jury, at plaintiffs' request, to disregard any reference on the map to the Village of Glencoe and any designation as to incorporated and unincorporated territory. This motion was allowed for the reason that the court considered the map unreliable. When defendant admitted by its pleadings that the collision occurred outside of the incorporated limits of Glencoe, there was no burden upon the plaintiffs to make such proof, and, as stated, there is nothing in the record which would justify a contrary holding. Thus, we think that Section 88 is applicable, as well as Sections 103, 104 and 121. Furthermore, the motion for directed verdict because of variance was properly denied.

There is evidence to the effect that a suitable place was available a short distance north of the point where defendant's trucks were stopped where they could have parked off the pavement. The evidence as to the absence of any light on the rear of the truck in question is rather meager. There is the testimony of all the plaintiffs, however, that they were looking in that direction and saw no light of any kind. In addition, there is the testimony of a State Highway police officer that when he arrived about fifteen or twenty minutes after the accident, there was no light of any kind on the rear of the truck involved in the collision; that when he called this to the attention of Reid, the driver of such truck, Reid went between the trailer and the truck, did something, and the lights went on. The mere fact that the lights were out at that time does plaintiffs little, if any, good for the reason it might well be assumed that they were out as a result of the collision. An inference of this kind, however, is largely destroyed by Reid's demonstration. We think this incident, in connection with

the testimony of the plaintiffs, was sufficient to justify a jury in concluding there were no lights on the rear of the truck. The defendant further contends that another witness testified he saw lights on the rear of defendant's trucks. This witness also testified, however, that he saw two trucks only, and inasmuch as it is conceded there were three, such testimony proves nothing insofar as the third truck was concerned.

This brings us to the vital question as to whether, under such circumstances, the court erred in overruling defendant's motion for directed verdicts. In support of its contention in this respect, defendant argues (1) there was no negligence on the part of the defendant, (2) the plaintiffs were guilty of contributory negligence as a matter of law, and (3) the proximate cause of the collision was the negligence of the driver of the car in which the plaintiffs were riding, and not the stoppage of its trucks upon the highway.

From what we have said, it follows that defendant's negligence was plainly disclosed. On our conclusion from the record that the collision occurred outside of the incorporated limits of Glencoe, there was evidence of a violation of all of the sections of the Statute as charged in the complaints. But even if we be in error in this respect, there is evidence, as pointed out heretofore, of a violation of Section 103. Also of Section 121, which is applicable to a highway outside of a business or residence district, and, regardless of whether the collision happened within or without the incorporated limits, there can be no question but that it happened beyond the business or residence district. Furthermore, the complaints contained numerous charges of general negligence. It is sufficient to refer to 9(e), which charges negligence in failure to provide or maintain a lookout for northbound traffic. It is not disputed but that one charge of negligence is sufficient to sustain the verdicts. In our opinion, the charges of general negligence were sufficient. Even if it be assumed that defendant's truck contained a light or lights on the rear as contended, it was still a jury question as to whether those in charge of defendant's trucks gave such warning to approaching vehicles as would free defendant from a charge of negligence. It must not be overlooked that a highway is a place for travel and not for parking. This is not a situation of unavoidable stoppage, as is sometimes referred to by the courts. The

trucks were stopped without legal reason or excuse. " * * * Our courts have held that the only excuse for stopping on the pavement is an emergency or exigency which leaves no other choice. (Citing many Illinois cases.) * * *" Fitzpatrick v. California & H. Sugar Refining Corp., Ltd., 309 Ill.App. 215, 219, 32 N.E.2d 990, 992. Irrespective of the reason for stopping, however, there was the duty to give proper and adequate warning to other motorists who might be using the highway. For failure in this respect, the negligence was inexcusable. Apparently defendant's drivers became so interested in the doings on the opposite side of the highway and in protecting southbound traffic that they forgot about the hazard which they had created to northbound traffic.

Defendant earnestly insists that plaintiffs were guilty of contributory negligence as a matter of law. On this issue a more serious question is presented. It is argued that by the exercise of ordinary care, plaintiffs could have seen the truck in time to have stopped, or to have passed it to the left. It is particularly stressed that the driving of plaintiffs' car with town or dim lights was negligence, and that if their vision was obscured by fog or haze, they were negligent in failing to reduce their speed so as to enable stoppage within the range of their vision. Defendant cites a number of cases in support of its argument in this respect. It would not be practical to refer to more than a few. The case of Cooney v. F. Landon Cartage Co., 308 Ill. App. 444, 32 N.E.2d 403, strongly relied upon, furnishes defendant little, if any support. There the driver of the parked truck had run out of gas and was forced to leave his truck standing on the highway. Four lights were burning on its rear at the time of the collision. The driver of another car following that driven by the plaintiff saw such lights when three or four blocks away, and when 500 feet away was able to determine that the parked truck was not moving. The court reasoned, under such circumstances, that the failure of the plaintiff to discover the stopped truck was negligence and reversed a judgment in favor of the plaintiff.

Johnson v. Kushler, 269 Ill.App. 553, perhaps furnishes stronger support for defendant's position. Of course the facts are dissimilar, but the court held that plaintiff was negligent in permitting his car to be driven on a country highway with dim

lights. While that may be negligence under some circumstances, we are of the view that it is not negligence per se under the circumstances of the instant case. We may take judicial notice of the fact that there is an extremely large amount of traffic on Skokie Highway, and there must be times and occasions when an ordinarily prudent person would consider it safe to drive with town lights. With the condition of the atmosphere, foggy and hazy as shown, at and near the point of collision, it is purely a matter of speculation as to. whether the bright lights would have been of assistance. There is room for the thought that they might have been harmful rather than helpful.

It is not contended that plaintiffs were driving at an excessive rate of speed. As they approached the point of collision, they were presented with what we think may be termed an extraordinary situation. Flares and torches were burning on the opposite side of the road where four large trucks were stopped. Their attention must have been diverted to some extent. They had a right to assume that the lane on which they were traveling was free of obstruction or, if not, that the one responsible for its blockage would give adequate and proper warning thereof. It may be the duty of the driver of a motor vehicle, when engulfed in fog, to reduce his speed, or perhaps stop, to avoid collision with an object in front. This, however, is not a situation of that character. There was nothing to interfere with their vision until they arrived at a point some 200 feet south of the point of collision. The speed of the car was reduced to some ten or twelve miles per hour. In our judgment, it can not be said that plaintiffs were negligent as a matter of law. As to whether they were in fact negligent was a matter peculiarly within the province of the jury. It is well to keep in mind that it is easy for a person, skilled or otherwise, to dissertate on what could or should have been done to avoid an accident. Circumstances and conditions, difficult and confusing, when faced, appear simple in retrospect. Hindsight may give a more accurate appraisement than foresight, but the existence or want of ordinary care must be determined from the latter rather than the former point of view.

What we have said applies generally to the plaintiffs. There is no occasion to consider separately those who were mere passengers in the car. From our conclusion that the case of Miller (driver of the car) was properly submitted to the jury, it follows that the causes of the other plaintiffs were also properly submitted. It also follows there is no merit in defendant's contention that its truck, standing on the highway, was merely a condition by which the collision was made possible, and that it was not the proximate cause thereof. Fitzpatrick v. California & H. Sugar Refining Corp., Ltd., 309 Ill.App. 215, 32 N.E.2d 990; Bos v. Richards, 7 Cir., 71 F.2d 262.

The judgment is affirmed.