## PEIGH et al. v. BALTIMORE & O. R. CO.
### No. 11119.

United States Court of Appeals District of Columbia Circuit.

Argued March 27, 1952.

Decided April 9, 1953.

---

Mr. Douglas A. Clark, Washington, D. C., with whom Mr. Charles H. Quimby, Washington D. C., was on the brief, for appellants.

Mr. Stephen Ailes, Washington, D. C., with whom Mr. Henry C. Ikenberry, Jr., Washington, D. C., was on the brief, for appellee.

Before CLARK, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a negligence case, arising out of the collision of a moving automobile occupied by plaintiffs-appellants with a boxcar standing parked on defendant-appellee's railroad tracks running along K Street, N. W., in the industrial part of Georgetown in the District of Columbia. The issue raised on appeal is whether the trial court erred in directing a verdict for defendant, after the evidence for both sides was in. It held that as a matter of law plaintiffs' recovery was doubly barred—by absence of proof of defendant's negligence and by plaintiffs' own contributory negligence.

█ In such a case, the evidence must be considered in the light most favorable to plaintiffs-appellants. Higashi v. Shifflett, 1952, 90 U.S.App.D.C. 302, 195 F.2d 784. So viewed, the main facts are these: The boxcar had been placed for unloading on a track in front of its consignee's place of

business on Friday, July 30, 1948, at an hour not specified. The track ran down the middle of K Street, an east-west street approximately 56 feet wide.[1] The boxcar was still there, loaded, on the following evening, at about 9:30 P.M., when the accident occurred.[2] The night was "rainy," "misty," "dark": visibility was poor, even though there was a street light 100 feet east of the boxcar. Appellants had drunk small quantities of beer during the day. The driver, Griffin, saw the railroad tracks as he drove west along K Street. He had seen them before and he knew they were used in daytime for moving railroad cars around, but he did not know cars were ever parked on them. The space between the tracks was paved like the rest of the street. Griffin was driving in or near the middle of the street, on the railroad tracks, "possibly" because of construction work on a freeway being built overhead. His speed was 20 or 25 miles an hour. He first saw the loaded boxcar when he was 30 or 35 feet from it. There was ample room—about 13 feet—to pass it on the right, but he believed, because of the pilings and other indications of construction work by the side of the road, that the road was impassable to the right; he therefore unsuccessfully attempted to pass the boxcar on its left. He applied his brakes "almost immediately" when he saw it, but apparently he skidded: the tracks "held" him, and his brakes took only "some" effect. The collision caused serious injuries to the appellants, and extensive damage to the automobile. Appellants offered some testimony to show that the boxcar was unlighted; appellee offered substantial evidence that it was equipped with a reflector and a burning red oil-lantern.

The first question is: Was there sufficient evidence of negligence on the part of the railroad to entitle plaintiffs-appellants to go to the jury? As to this, appellants rely on a Police Regulation which provides that railroad cars shall not "be parked or stored on a street for an unreasonable time."[3] They contend that the regulation was violated, and that this constituted negligence *per se*, within the doctrine of such cases as Ross v. Hartman, 1943, 78 U.S.App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370, certiorari denied 1944, 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080.

We think the trial court was correct in putting this contention out of view. Whether the regulation was in fact violated we do not now decide, for the reason that the doctrine of negligence *per se* is not in our opinion applicable here. Violation of a regulation does not, *ipso facto*, give rise to civil liability unless the regulation is one designed to prevent the sort of harm to the individual relying on it which has in fact occurred. Restatement of Torts § 286 (a); Ross v. Hartman, supra; Exner v. Sherman Power Const. Co., 2 Cir., 1931, 54 F.2d 510, 80 A.L.R. 686; cf. Union Pacific Ry. Co. v. McDonald, 1894, 152 U.S. 262, 283, 14 S.Ct. 619, 38 L.Ed. 434. Further, the doctrine of negligence *per se* is one which must be applied cautiously, with an eye to essential fairness. If its use in a particular case tends to produce liability based not on real fault, or any real departure from standards of prudent conduct, but only on a technicality, the courts are justifiably reluctant to apply it.[4] In

---

1. There were two parallel sets of tracks laid in a 17-foot right-of-way; the track on which the boxcar was parked was in the northern half of the right-of-way.

2. It had been moved off the street for 15 or 20 minutes at some time on Saturday while another car was being switched around. It was then replaced on the track in approximately the same position.

3. Art. XXV, Sec. 4, Police Regulations of the District of Columbia.

4. See, for example, cases involving emergencies and other claimed excuses: Conder v. Griffith, 1916, 61 Ind.App. 218, 111 N.E. 816; Lukin v. Marvel, 1935, 219 Iowa 793, 259 N.W. 782; Irwin v. Judge, 1909, 81 Conn. 492, 71 A. 572. Cf. Restatement of Torts § 286, comment c. The use of the negligence *per se* doctrine is also qualified by the requirement that the violation of the regulation must be shown to have caused the plaintiff's injury. See Schear v. Ludwig, 1944, 79 U.S.App.D.C. 95, 143

general, the guiding principle is whether its application is necessary to effectuate the legislative purpose.[5] In our view, the present case does not fall within that category. We are clear that the regulation here involved was promulgated in the interests of expediting traffic and encouraging commerce in the city. The safety of passing motorists was not its goal, at least in any sense which would make applicable the doctrine of negligence *per se*. It appears under the heading "Miscellaneous Regulations," and is not to be found in the Vehicle and Traffic Regulations of the District. There is no absolute prohibition contained in the regulation: parking is in effect permitted, so long as it is for a reasonable time only. How reasonableness is to be measured does not appear: no doubt the railroad's problems are to be considered along with those of neighboring property owners and other interested parties. At any rate it is not clear that reasonableness is to be measured primarily by safety considerations, as is true with the ordinary traffic regulation.[6] Under these circumstances, we think that the doctrine of negligence *per se* does not apply.

■ The appellee railroad, for its part, points to its authority, by act of Congress, to "maintain single or double track railways * * * and to run cars on said tracks" on K Street. Act of Sept. 26, 1888, 25 Stat. 492. But this statutory authority to use the street does not exonerate the railroad from the consequences of acts of negligence.[7] Nor would express authority to park boxcars on the street have any such exonerating effect, even assuming that the Police Regulation discussed above could be regarded as such authority. If defendant parks its cars on the street without authority, it may commit a nuisance.[8] But authority or lack of authority is not conclusive of the issue of negligence.

■ On that issue, the factor which appears of most significance in this case is the character and quality of the warning given plaintiffs. On the present record, it is not clear that the rear of the boxcar was so lighted as to give sufficient warning to motorists. Cases in which unlighted vehicles are parked on highways at night "usually present issues of fact for a jury's determination." Harkins v. Somerset Bus Co., 1932, 308 Pa. 109, 110, 162 A. 163, 164; see Annotation, 104 A.L.R. 485, 512. And even if the boxcar "contained a light or lights on the rear as contended, it was still a jury question as to whether those in charge * * * gave such warning to approaching vehicles as would free defend-

·F.2d 20; Falk v. Finkelman, 1929, 268 Mass. 524, 168 N.E. 89; Boronkay v. Robinson & Carpenter, 1927, 247 N.Y. 365, 160 N.E. 400. "The important thing is whether the act or omission to act which transgressed the statute produced the injury. If it did not, then the violation of the statute has no bearing upon liability." Lowndes, Civil Liability Created by Criminal Legislation, 16 Minn.L.Rev. 361, 371–72 (1932). See also Morris, The Relation of Criminal Statutes to Tort Liability, 46 Harv. L.Rev. 453 (1933).

5. See, inter alia, Ross v. Hartman, supra; Danzansky v. Zimbolist, 1939, 70 App. D.C. 234, 105 F.2d 457; Janof v. Newsom, 1931, 60 App.D.C. 291, 53 F.2d 149; Capital Traction Co. v. Apple, 1910, 34 App.D.C. 559; Clements v. Potomac Electric Power Co., 1906, 26 App.D.C. 482. Compare O'Donnell v. Elgin, J. & E. R. Co., 1949, 338 U.S. 384, 390, 70 S.Ct. 200, 94 L.Ed. 187.

6. Compare the Traffic and Motor Vehicle Regulations discussed in the concluding portion of this opinion.

7. See Pittsburgh, C. & St. L. Ry. v. Bennett, 1893, 9 Ind.App. 92, 35 N.E. 1033, 1036; cf. Baltimore & P. R. Co. v. Fitzgerald, 1894, 2 App.D.C. 501, 519–520.

8. Cf. Nietzey v. Baltimore & P. R. Co., D.C.1886, 5 Mackey 34 at page 42: in the absence of express authorization from a competent source, the defendant is not entitled "to convert the public highways, the streets and avenues of the city, into freight yards. The proper place for cars when not in use, is the depot, station or yard of the company; and the proper place to * * * unload freight is a freight station. It has no right, therefore, to incumber the street with cars and to leave them there when not in use. That is an unauthorized occupation of a public highway." See also Baltimore & P. R. Co. v. Fitzgerald, supra.

ant from a charge of negligence." Miller v. Advance Transp. Co., 7 Cir., 1942, 126 F.2d 442, 446. Here all are agreed that visibility was very poor on the night of the accident. Numerous witnesses testified that they saw no light on the boxcar. And a policeman investigating the accident, who testified he saw the light on the boxcar, apparently failed to see it until another person hunting for it pointed it out to him. The jury should have been permitted to consider whether the defendant railroad used reasonable care to warn plaintiffs-appellants of the presence of the boxcar on the tracks. Cf. Kazan v. Wilkes-Barre Ry. Corp., 1943, 347 Pa. 232, 32 A.2d 32. The case was thus one which should have been submitted to the jury on the issue of defendant's negligence.

■ We are brought, then, to the issue of contributory negligence. There was substantial evidence of the driver's lack of due care. But, taking the evidence in the light most favorable to him, we have concluded that the trial court erred in finding him negligent as a matter of law. Reasonable jurors could certainly find that he was not drunk. We think they could also find that his speed was not excessive under the circumstances, and that he was justified by the construction work in driving near the middle of the street and in trying to pass the boxcar on the left. His awareness of the existence of the railroad tracks is at most simply one element to be considered on these points. It has been held that "A railroad track occupying a street used constantly by vehicular traffic in an industrial district is not of itself a warning of danger." Watson Bros. Transp. Co. v. Chicago, St. P. M. & O. Ry. Co., 1947, 147 Neb. 880, 25 N.W.2d 396, 399. Certainly the driver was under no duty to avoid using the portion of the street where the tracks were laid. Cromeenes v. San Pedro, L. A. & S. L. R. Co., 1910, 37 Utah 475, 109 P. 10. Neither does the mere fact of hitting a parked boxcar establish contributory negligence, where it was parked lengthwise in the street, under conditions of poor visibility and in the neighborhood of overhead construction work likely to be distracting to passing motorists. Cases holding otherwise with respect to boxcars blocking crossings are distinguishable on their facts; nor is the usual rule in such cases applied where "special circumstances," like those present here, make it unreasonable. See Annotation, 161 A.L.R. 111, 148. It cannot "be said that the failure to see an unlighted object within the range of one's headlights is negligence per se." Harper v. Northwestern Pac. R. Co., 1939, 34 Cal.App.2d 451, 93 P.2d 821, 824. A plaintiff is "not bound to anticipate that the defendant [will] negligently permit its car to stand unlighted in the middle of a highway." Kazan v. Wilkes-Barre Ry. Corp., supra [347 Pa. 232, 32 A.2d 35]. Even if the boxcar was lighted, as defendant contended, we think that on this record the question whether appellants were bound to have seen it was for the jury. The nature of the warning given by defendant is relevant to the issue of appellants' contributory negligence in the same way that it is to the issue of appellee's primary negligence. So, for the same reason that we think primary negligence is a jury question here, insofar as it turns on this factor, we think contributory negligence must also be, insofar as it turns on the same factor.

■ Appellee invokes certain Traffic and Motor Vehicle Regulations for the District of Columbia, contending that the driver violated them, and was thus guilty of contributory negligence as a matter of law. Section 22(b) prohibits driving at an unreasonable and imprudent speed under the circumstances. Section 23(a) requires drivers to drive as closely as practicable to the right-hand side of the road. These are safety regulations, to which the negligence *per se* doctrine is applicable, on the basis outlined earlier in this opinion. At the same time, the proper functioning of the jury system must be preserved. Both these regulations hinge on reasonableness, as determined in the light of all the facts: they do not attempt to set up precise and rigid standards. The question whether such a regulation has been violated is thus one which is ordinarily appropriate for the consideration of the jury in determining an issue of negligence, primary or contributory. In this situation, the application of

the negligence *per se* doctrine still leaves the fundamental issue of negligence with the jury. The judge is no more able to direct a verdict by reason of the claimed violation of such a regulation than he would be in the absence of the regulation.[9]

■ The driver's contributory negligence, if any, does not bar the other appellants. Unless a passenger himself fails to do something he reasonably might have been expected to do to avert an accident, he is ordinarily entitled to recover from a negligent defendant, regardless of the negligence of his driver. Certainly the passengers here cannot be charged with contributory negligence as a matter of law if the driver cannot. The question should have gone to the jury. See Miller v. Advance Transp. Co., supra.

■ We do not wish to underestimate or deprecate the weighty reasons which led the trial judge to direct a verdict for the defendant. It is with real reluctance that we have reached the conclusion that he was in error. But we think it well to add that in a case of this kind, if there is room for a difference of opinion, the wise course is for the trial judge to allow the case to go to the jury. If a verdict is deemed by the court to be contrary to the evidence, judgment may be entered *non obstante veredicto*. Action by this court in the event of an appeal from such a judgment would not entail the trouble and expense of a new trial.

For the reasons given, the judgment of the District Court will be

Reversed, and the cause remanded.

CLARK, Circuit Judge (concurring).

I very reluctantly concur in the result reached by the majority. I cannot agree that the railroad was not guilty of negligence *per se*, and I think therefore that this case should have been reversed outright.

During the trial, the attorney for the railroad, without introducing any evidence, very blandly announced that the B. & O. had an easement. The judge, later, in instructing a verdict for defendant, with equal blandness reiterated that of course the railroad had an easement. I fail to see, how, upon the evidence in this case, the trial judge was able to reach that conclusion. As I read the record, it is totally devoid of any showing that an easement to use the public street for prolonged parking was ever created, nor was any proof forthcoming to indicate in what manner and pursuant to what legal theory the easement might have been established by appellee or granted to it, or what rights, powers, or benefits appellee might have acquired under this so-called easement.

In my experience in private practice I represented a number of railroads, including the B. & O., and I had occasion to examine a number of easements. I never heard of a case where the easement did not have to be alleged and proved in its terms and limitations; moreover, in my opinion, it is extremely unusual, to say the least, to find an easement which permits a railroad company to park freight cars on the public street over a week end.

Whenever an easement is alleged to have arisen by prescription, its exact terms must be defined. Certainly, mere use of a way over a period of time—particularly if such use is in common with the general public—does not permit the drawing of an inference that an easement exists. On the contrary, the party relying upon it must prove all of the necessary elements. See Douglass v. Lehman, 1933, 62 App.D.C. 264, 66 F.2d 790.

On the other hand, if the easement is claimed to have been created by a written instrument, such instrument must be introduced into evidence. Appellee may have relied upon the Act of September 26, 1888, but I find no language in that statute which could be construed to permit the railroad to park its boxcars on the public street for extended periods of time so as to block traffic to the detriment of the public at large. That such a right cannot be read into the statute as a necessary adjunct to

9. For a case where a regulation states a precise and definite standard which has been clearly violated, see Martin v. Herzog, 1920, 228 N.Y. 164, 126 N.E. 814. But cf. cases cited at note 4, supra.

powers or rights specifically enumerated therein, is indicated by the almost coincident case of Baltimore & P. R. Co. v. Fitzgerald, and by Neitzey v. Baltimore & P. R. Co., both cited in the majority opinion. I absolutely agree with the principle so well stated in these cases that the authority given by the government to railroads to occupy certain streets by their tracks does not give them an unlimited right to the use of such streets for storage purposes.

Since there was a total failure to prove the existence of an easement, appellee at best may be regarded as having had a license to use the street for actual rail movements; it certainly had no authority to convert the highway into an auxiliary freightyard, or to erect a huge, semi-permanent obstacle directly in the line of traffic. In my opinion, the status of the railroad company at the time of the accident was simply that of a trespasser. The case should be reversed outright on the ground that negligence *per se* was proved by the conduct of the railroad, which unlawfully and without a measure of right, trespassed upon the public street, created an unusual and entirely unforeseeable danger zone there, and thereby caused the accident.