OTIS GARDENS, Inc., a body corporate, and Government Employees Insurance Company, a body corporate, Appellants,

v.

Dorothy HAUSER, Appellee.

No. 1962.

Municipal Court of Appeals for the District of Columbia.

Argued May 6, 1957.

Decided July 10, 1957.

Burton R. Thorman, Washington, D. C., for appellants.

Thomas J. Ahern, Jr., Washington, D. C., for appellee.

Eugene B. Paulisch, Washington, D. C., also entered an appearance for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11-776 (b).

CAYTON, Acting Judge.

This was an action for damages caused by a fire. It was alleged that the fire resulted from the negligence of defendant in permitting gasoline to spill from her automobile. By written memorandum the trial judge found in favor of defendant, and plaintiffs appeal.

It was shown that defendant, on June 27, 1955, instructed a service station attendant to fill her gasoline tank, and after this was done she drove less than two blocks and parked outside her residence, Otis Gardens Apartments. Defendant viewed her automobile daily from her apartment window but did not move it or go near it. On the afternoon of July 2, a fire broke out in the vicinity of defendant's automobile, destroying it and severely damaging one belonging to Jo Ann Mintz.[1] The fire also damaged the apartment house of plaintiff Otis Gardens, Inc. Plaintiffs introduced evidence tending to show that there was a substantial rise in temperatures (with fluctuations) from a maximum of 80 degrees on June 27 to a high of 96 degrees on July 2. Because of a slope on which defendant's automobile was parked, the level of gasoline in the tank might have occupied the bottom opening of the tank's filler neck. A chemical engineer testified that due to this situation and the rise in temperature, increased vapor pressure may have forced gasoline from the tank through the vent hole of the tank cap from where it dripped to the ground. For one, two, or three days before the fire two witnesses saw liquid having the odor of gasoline under the automobile, and this seemed to be dripping from the left rear fender; but no notice of this fact was communicated to defendant.[2] How these circumstances resulted in a fire, if they did, was not answered by any factual evidence. An inspector from the Office of the Fire Marshal wrote in his report "Careless smoking ignited gasoline leaking from gas tank of auto and spread to another auto and apartment building." The inspector (who appeared as a witness) stated however that there was no physical evidence of anything establishing the cause of ignition,

1. Appellant Government Employees Insurance Company sued as subrogee of Jo Ann Mintz.

2. One of the witnesses testified that he attempted without success to learn the identity of the owner of the automobile, but made no report of the matter to any public official.

and he concluded that it must have been from a carelessly tossed lighted cigarette or match. He admitted that the fire could have resulted from other causes.

Although appellants make several assignments of error, they relate basically to the trial judge's application of Article VIII, Section 4, of the Police Regulations of the District of Columbia; and Part I, Section 79(c), of the District of Columbia Traffic and Motor Vehicle Regulations. Appellants contend that defendant was in violation of these regulations and thus, in effect, was negligent *per se*.

The first of these regulations [3] provides:

"Article VIII

"Streets and Roads

\*  \*  \*  \*  \*  \*

"Sec. 4. No person shall pour, or spill, or permit to drip upon the pavement of any street, alley, or public place in the District of Columbia any kerosene, gasoline, benzine, or other similar oil or oily substance or liquid."

Appellants contend that this regulation is primarily for the purpose of preventing fires by prohibiting spillage of flammable liquids and that a violation of the regulation, being one designed to promote the public safety, is negligence *per se*. They rely on Ross v. Hartman, 78 U.S.App.D.C. 217, 139 F.2d 14, 158 A.L.R. 1370, certiorari denied, 321 U.S. 790, 64 S.Ct. 790, 88 L. Ed. 1080, which dealt with a regulation requiring automobiles to be locked. A truck was left unlocked and an unknown person drove it off and injured a third person. It was held that the purpose of the regulation was to promote public safety, and that the violation constituted negligence and rendered the owner liable.

That principle is not applicable here. Our real question is whether it can be said that defendant "permitted" gasoline to drip from her automobile. It is clear and un-contradicted that she had no actual knowledge that gasoline was escaping from her automobile. Consequently it cannot be said that "permitting" the drip can be charged to her because of non-action following such knowledge. And we may agree with appellants, for purposes of this case, that "permit" as used in the regulation, is applicable not only where a person has actual knowledge, but also in those cases where in the exercise of ordinary prudence he could or would have discovered and stopped the drip.[4]

To establish that defendant should have been aware of the drip, plaintiffs rely upon the traffic regulation which provides in part:
"Section 79. \* \* \*

\*  \*  \*  \*  \*  \*

"(c) No person shall park a vehicle, whether occupied or not, otherwise than temporarily for the purpose of and while actually engaged in loading or unloading of passengers or freight in any of the following places:

\*  \*  \*  \*  \*  \*

"4. On any roadway for more than 18 consecutive hours."

This regulation, however, was not intended as a safety measure for the protection of others and bears no relation whatever to the harm which befell appellants. At the most, it was intended to prevent the public streets being used for unrestricted private parking, or to prevent the abandonment of vehicles on the streets, or to accomplish some other similar purposes. It imposed no duty on defendant, either by its terms or

---

3. Hereinafter referred to as the police regulation.

4. As part of their argument appellants contend that the trial judge erroneously held that the police regulation required actual knowledge of a condition pro-scribed by the regulation; and they discuss several cases construing the meaning of the word "permit." Since they concede that constructive notice, at least, is required, we find it unnecessary, on our disposition of the case, to decide this point.

implicitly, to observe gasoline dripping from her automobile nor to exercise other similar cautions. Accordingly, we are clear that a violation of this regulation is insufficient to charge defendant with constructive notice and thus establish a technical violation of a different regulation against permitting gasoline to drip. Our holding is supported by Peigh v. Baltimore & O. R. Co., 92 U.S.App.D.C. 198, 204 F.2d 391, 393, 44 A.L.R.2d 671. There the court pointed out that

> " * * * the doctrine of negligence *per se* is one which must be applied cautiously, with an eye to essential fairness. If its use in a particular case tends to produce liability based on not real fault, or any real departure from standards of prudent conduct, but only on a technicality, the courts are justifiably reluctant to apply it. * * *"
> (Footnote omitted.)

Appellants argue, nevertheless, that had defendant moved her automobile or gone to the vehicle and seen it, she would have observed the dripping gasoline. But it seems to us that it may just as reasonably be argued that had she moved her car at night she would not have been likely to see gasoline on the roadway; indeed, in the cooler night temperature the leakage may have stopped.

Speculation aside, we have pointed out that the parking regulation is not a safety regulation; and quite apart from that regulation, her failure to move or inspect the automobile is clearly no evidence of negligence in the circumstances of this case. Defendant, in replenishing her gasoline supply and parking her car, was not shown to have acted in any manner inconsistent with the duty of a reasonable motorist. We think it would be wrong to hold that an ordinarily prudent person is charged with the sort of technical knowledge which would forewarn him that the combination of circumstances here present could create a leakage of gasoline.

Affirmed.